**EBBY HALLIDAY REAL ESTATE, INC., Appellant**

v.

**James MURNAN and Kerrie Murnan, Appellees.**

No. 2–95–049–CV.

Court of Appeals of Texas, Fort Worth.

Jan. 11, 1996.

Rehearing Overruled March 14, 1996.

J. Kent Newsom and Steven K. Terry, Newsom, Terry and Newsom, L.L.P., Dallas, for Appellant.

David L. Whaley, Law Offices of David L. Whaley, N. Richland Hills, and Edmund N. Anderson, Law Offices of Edmund N. Anderson, Bedford, for Appellees.

Before DAY, BRINGHAM and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

Ebby Halliday Real Estate, Inc. appeals a $79,000 judgment based on jury findings of deceptive trade practices by the company in a residential sale to the Murnans. Originally, the Murnans sued Halliday, its associate Sammie Bell, and Coldwell Banker Relocation Management Services, Inc., which was the owner and seller of the property. Coldwell Banker's summary judgment motion was granted, and the remaining parties tried their case to a jury. The jury found that Sammie Bell did not cause the Murnans' damages. In eight points of error, Halliday contends that: (1) there was no evidence to support the jury's findings against Halliday; (2) the trial court erred in basing its judgment on conflicting measures of damages instead of requiring the Murnans to make an election; and (3) the trial court erred in denying Halliday's motion for judgment notwithstanding the verdict. We sustain the points of error and reverse the judgment.

### The Transaction

In June of 1985, James and Kerrie Murnan were house shopping and saw a house they liked during a drive through a Roanoke, Texas, neighborhood. They contacted Sammie Bell, the agent whose name was on a Halliday sign in the front yard. The Murnans had little experience buying houses, so Kerrie was accompanied to the Halliday office by her mother, Carol Kantak, who had approximately fifteen to twenty-one months' experience as a real estate sales agent in Texas. At the Halliday office, they met Bell, who had been a licensed agent with Halliday for about five years. Bell had written a "flyer" containing information about the house, which was published by Halliday, and she gave a copy to Kerrie and Kantak. The flyer described the property as a "treed ½ ac[re]...." and Kerrie Murnan stated that Bell also verbally represented to her that the lot was one-half acre. Kerrie testified that she believed the flyer and Bell's verbal representation. The Murnans also testified that Bell told them that the septic pump was an irrigation pump and that the septic system was fine and would be inspected. The Murnans made no independent investigation of the property.

Later, Kantak submitted a contract for the Murnans' purchase of the house, contingent on their being able to obtain FHA insured financing for it. That contract committed the Murnans, as buyers, to the following:

Buyer accepts the Property in its present condition, subject only to FHA required repairs and foundation ok inspection.

Kerrie testified that she and her husband selected that language for the contract and that Bell did not suggest it to them. The contract was signed by Kantak as "co-broker." The purchase price was $79,900. No sale closed under that contract because the property, which was slightly less than one-half acre, did not qualify for FHA financing.

Meanwhile, the real estate company where Kantak worked had closed. After discussions with Bell, the Murnans asked her to prepare a new contract that would enable them to buy the house with a conventional loan. Bell prepared another contract. Again, the purchase price was $79,900 and the contract named Kantak as "co-broker," although she did not sign. The new contract included the following language:

Buyer accepts the Property in its present condition, subject only to any lender required repairs and FOUNDATION O.K. INSPECTION.

Before closing, the seller made repairs to the house foundation and air conditioner. Kerrie testified that she and James trusted Bell on the inspections and closing, and that Bell told them "everything was fine." At closing on July 22, 1985, the Murnans first saw copies of inspection reports on the house.

Three or four weeks after closing, the Murnans had problems with the air conditioner and raw sewage from the septic system. Kerrie testified that Bell and Halliday refused to accept responsibility. Bell's testimony agrees with this.

The Murnans reported the septic problem to the Denton County Health Department, with the result that they were cited for septic contamination and were warned to repair it or be fined $200 per day and perhaps jailed.

They paid $3,000 to a company for repairs, but they testified that the aesthetics of the property were destroyed by the repairs. After the Murnans lived in the house about two years, water from their yard entered the ground floor of the house on two occasions. James testified that he did remedial drainage work, because he could not afford to hire others for the task.

Each of Halliday's points of error was preserved, either by timely objection at trial or by filing a motion for judgment notwithstanding the verdict and a motion to modify, correct, or reform the judgment. *See Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex.1991).

Points of Error

■ All but two of Halliday's points of error assert that there was no evidence to support the jury's answers to questions asked in the charge. In determining a "no evidence" point, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence. *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex. 1993).

■ A "no evidence" point of error may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence established conclusively the opposite of a vital fact. *Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.*, 793 S.W.2d 660, 666 n. 9 (Tex. 1990); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 361 (1960). There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. *Orozco v. Sander*, 824 S.W.2d 555, 556 (Tex.1992).

Each of the first four points of error protests the jury's answer to a subpart of Question No. 7, which asked jurors to determine the sums of money, if any, that would fairly and reasonably compensate the Murnans for their actual damages. In subpart 1 of Question No. 7, the court instructed the jury to consider as an element of damages "the difference, if any, in the value of the subject property as it was received and the value it would have had if it had been as represented and warranted." This measure of damages is known as the "benefit of the bargain" measure. *Leyendecker & Associates, Inc. v. Wechter*, 683 S.W.2d 369, 373 (Tex.1984). The jury's answer was "$20,000," and Halliday's first point of error states that there is no evidence to support it.

■ Kerrie testified that in her opinion the property's value on the *day of trial* was $40,000, and James testified that in his opinion its value on the *day of trial* was zero. Trial began September 28, 1992, but the sale closed more than seven years earlier, July 22, 1985. The only evidence admitted about the property's value on the day the Murnans *received* it, is the $79,900 contract. Thus, the only evidence is the contract price in 1985 and the Murnans' opinions of value more than seven years later. We hold that the proof did not supply a reasonable basis for the jury's answer to subpart 1. Because there is no evidence that on July 22, 1985 there was any difference between the value as represented and the actual value *received* by the Murnans, the first point of error is sustained.

The second point of error challenges the jury's answers to subpart 2 of Question No. 7, in which the court instructed the jury to consider as an element of damages "the reasonable and necessary cost of repair incurred by the Murnans in the past." The jury's answer was "$5,000" and Halliday asserts that there is no evidence to support this finding. The third point of error protests the jury's answer to subpart 3 of the question, in which the court instructed the jury to consider as an element of damages "the rea-

sonable and necessary cost of repair incurred in the future." The jury's answer was "$10,000" and Halliday asserts that there is no evidence to support it. We will consider points two and three together.

■ A party seeking recovery for the cost of repairs must prove their reasonable value. *GATX Tank Erection Corp. v. Tesoro Petroleum Corp.*, 693 S.W.2d 617, 619 (Tex.App.— San Antonio 1985, writ ref'd. n.r.e.). The charge instructed the jury to find repair costs that, from a *preponderance of the evidence*, were *reasonable* and *necessary*. As evidence of past and future costs of repairs, the Murnans introduced business records affidavits, which were attached to invoices and other data, and records from their personal checking account. These were admitted in evidence.

■ To establish the right to recover costs of repair, it is not necessary for a claimant to use the words "reasonable" and "necessary"; a claimant need only present sufficient evidence to justify a jury's finding that the costs were reasonable and the repairs necessary. *Ron Craft Chevrolet, Inc. v. Davis*, 836 S.W.2d 672, 677 (Tex.App.—El Paso 1992, writ denied).

James testified that he hired Denton County Plumbing & Septic Company to make repairs for $3,000, but had problems with the system after that work was done. To remedy those problems, he made alterations to the septic system himself, hiring his brother-in-law and using a backhoe to dig a pit or trench at the end of a two inch line. They installed corrugated metal and rock in the trench and James rerouted the washing machine from the system. He also altered the surface drainage of his property by regrading some of the dirt, building some rock retaining walls, and placing railroad ties at various locations on the grounds.

The only septic systems expert who testified was Bruce Martin, hired by the Murnans to analyze the septic system after it was altered. Martin had neither seen their original system nor supervised its alteration. He did not know the drainage field of the original system. He did not know whether the original or the altered systems had met the construction standards of the Texas Department of Health. When asked his opinion as to when it would be necessary to replace the altered system, he told the jury "It's not a matter of replacing. It's a matter of adding to it or adding supplemental systems." He estimated it would cost four to six thousand dollars to add a supplemental system to the Murnans' altered system. Martin did not testify whether the Murnans' expenditures on the original system were reasonable or necessary.

■ The Murnans argue that simply being eligible for jury service in Denton County meant that the jurors selected and seated were knowledgeable about costs in that county and could use their common sense to infer and find an amount reasonable and necessary for repairs. The argument is not persuasive. Mere proof of amounts charged or paid does not raise an issue of reasonableness and such amounts ordinarily cannot be recovered without evidence showing the charges were reasonable. *GATX Tank Erection*, 693 S.W.2d at 620; *Bradley v. Castro*, 591 S.W.2d 304, 306 (Tex.Civ.App.—Fort Worth 1979, no writ); *Frost Nat'l Bank of San Antonio v. Kayton*, 526 S.W.2d 654, 666–67 (Tex.Civ. App.—San Antonio 1975, writ ref'd n.r.e.); *Allright, Inc. v. Lowe*, 500 S.W.2d 190, 191 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ).

■ In the record, there is evidence that the Murnans believed repairs were necessary, but no evidence that the specific work done was necessary or that the costs spent on it were reasonable. The jury was left to speculate whether money spent on the work was reasonable and whether that particular work was necessary. The evidence shows that problems existed after the work was done. Points of error two and three are sustained.

The fourth point of error protests the jury's answer to subpart 5 of Question No. 7, in which the court instructed the jury to consider as an element of damages "the reasonable value of the time spent by the Murnans in the past attempting to correct the subject property." The jury's answer was "$4,000," and Halliday asserts that there is

no evidence to support it. The Murnans agree, so point of error number four is sustained.

Point of error number five alleges that the trial court's judgment allows the Murnans to recover on the jury's award of two inconsistent measures of damages and that the law requires the Murnans to make an election. The jury found damages for the Murnans on *both* the benefit of the bargain measure and the out-of-pocket or cost of repairs measure.

In a deceptive trade practices case, a plaintiff may recover under either the benefit of the bargain measure or the out-of-pocket measure, whichever gives the greater recovery; the plaintiff may not recover both. *Leyendecker & Associates, Inc.*, 683 S.W.2d at 373. When a prevailing party fails to elect between alternative measures of damages, the court should use the findings that afford the prevailing party the greater recovery and render judgment accordingly. *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 367 (Tex.1987). If the trial court has not done this, the appellate court will reform the judgment to effect the election. *Star Houston, Inc. v. Shevack*, 886 S.W.2d 414, 423 (Tex.App.—Houston [1st Dist.] 1994), *writ denied per curiam*, 907 S.W.2d 452 (Tex. 1995).

Because we have found no evidence to support the jury's answers to either the benefit of the bargain measure or the out-of-pocket measures and have sustained points of error one through four, there are no jury findings on which this court could base an election by reforming the trial court judgment. Point of error number five is sustained.

We will consider points of error six and seven in reverse order.

Part of the Murnans' claim of deceptive trade practices is that the conduct of Halliday was unconscionable. The jury agreed, but point of error seven complains that there is no evidence to support that jury finding.

Jury Question No. 2 asked whether Halliday engaged in any false, misleading, or deceptive act or practice that was a producing cause of damages to the Murnans, and the jury answered "no." Jury Question No. 4 asked whether Halliday engaged in any unconscionable action or course of action that was a producing cause of damages to the Murnans, and the jury answered "yes." Jury Question No. 6 asked whether Halliday's conduct was committed knowingly, and the jury answered "no."

A corporation can only act through its agents. *State Farm Fire & Casualty Co. v. Gros*, 818 S.W.2d 908, 912 (Tex. App.—Austin 1991, no writ). In answers to jury Questions 1 and 3, the jury found Sammie Bell did not engage in any false, misleading, deceptive, or unconscionable act that was a producing cause of damages to the Murnans. Because there is no evidence that anyone but Bell acted for Halliday we find no evidence to support the jury's finding that the Halliday corporation acted unconscionably. Point of error seven is sustained.

Point number six says there is no evidence to support the jury awards of attorney fees for the Murnans' attorneys, Edmund N. Anderson and David L. Whaley, who do not practice in the same lawfirm. The jury did not allocate the fees between the two, but awarded them a total of $40,000 for preparation and trial, $2,500 for an appeal to the court of appeals, $2,500 for making or responding to an application for writ of error to the Texas Supreme Court, and $1,000 if that application is granted. Halliday also complains that the evidence does not identify the separate work and charges of each attorney nor does it segregate the amount of attorney fees charged for claiming against Coldwell Banker, or the amount charged for claiming against Bell, whom the jury found not liable, from the amount charged for claiming against Halliday. Such segregation is required. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11–12 (Tex.1991).

The trial court allowed the Murnans to file a written trial amendment, which restates their entire claim against Halliday, Bell, and Coldwell Banker. *See* TEX.R.CIV.P. 66. The trial amendment alleges causes of action against the three defendants for fraud in a real estate transaction and deceptive trade practices. The amended petition asks for attorney fees under sections 17.50(d) and

27.01 of the Texas Business and Commerce Code, and section 38.001 of the Texas Civil Practice & Remedies Code. The wording of each of these statutes is plain: a party who prevails in the trial of a cause of action described in any of the three statutes is entitled to recover attorney fees. Because we find that the Murnans' claims have not prevailed in the lawsuit, we sustain point of error six.

 Point of error eight alleges that the trial court erred in not granting Halliday's motion for judgment notwithstanding the verdict. Because of our rulings on points of error one through seven, we sustain point number eight. When "no evidence" points are sustained, it is our duty to render judgment for the appellant because that is the judgment the trial court should have rendered. *See* TEX.R.APP.P. 80(b) and 81(b); *Vista Chevrolet, Inc. v. Lewis,* 709 S.W.2d 176, 176 (Tex.1986); *National Life & Accident Ins. Co. v. Blagg,* 438 S.W.2d 905, 909 (Tex.1969). Accordingly, the judgment of the trial court is reversed and rendered that the Murnans take nothing against Halliday. Costs are adjudged against the Murnans.