PERRY HOMES, Joint Venture,
Appellant,

v.

Aziz ALWATTARI and Hajer
Alwattari, Appellees.

No. 2–98–106–CV.

Court of Appeals of Texas,
Fort Worth.

Nov. 2, 2000.

Rehearing Overruled Jan. 4, 2001.

Gardere Wynne Sewell & Riggs, L.L.P., Geoffrey H. Bracken, Houston, Gardere & Wynne, L.L.P., Stacy R. Obenhaus, Allison Freeman Logan, Dallas, for Appellant.

Law Offices of Anne P. Stark, P.C., Anne P. Stark, Dallas, for Appellees.

PANEL A: CAYCE, C.J.; DAY and LIVINGSTON, JJ.

## OPINION

JOHN CAYCE, Chief Justice.

In this case we must decide once again whether the limitations on damages and defenses to liability provided to contractors in the Residential Construction Liability Act[1] (RCLA) apply to a homeowner's suit against a contractor for damages caused by a construction defect, when the

---

1. Tex.Prop.Code Ann. §§ 27.001–.007 (Vernon 2000).

contractor fails to make a reasonable written offer of settlement. We hold that the limitations on damages and defenses to liability do not apply in such a situation. We further hold that appellees' Deceptive Trade Practices Act[2] (DTPA) claim is not preempted by the RCLA under the facts of this case. We modify the trial court's judgment to delete the award to appellees for costs of repairs under the DTPA. We affirm the remainder of the judgment, as modified.

## I. BACKGROUND FACTS

Appellees Aziz and Hajer Alwattari bought a new home in Arlington, Texas, constructed by appellant Perry Homes. The Alwattaris signed an earnest money contract in December 1991 to buy the house for $199,500. Prior to closing in January 1992, the Alwattaris received a warranty from Home Owners Warranty Corporation. In late 1992, the Alwattaris noticed hairline cracks in the walls and expansion joints of the house and contacted Perry Homes. Perry Homes sent David Redd to inspect the property and take elevation measurements. Redd reported to Perry Homes that there had been some shifting in the foundation.

In 1994, the Alwattaris were replacing the damaged flooring in their kitchen, when they noticed a crack in the foundation. Upon further inspection, Redd found additional settlement under the foundation. On August 31, 1994, Mr. Alwattari sent a letter to Perry Homes' warranty department and asked what remedial actions should be taken. Perry Homes sent Bill Ford to the house to investigate the Alwattaris' concerns. Based on Ford's findings, Perry Homes began performing cosmetic repairs to the house, which were needed due to the shifting of the foundation, and informed the Alwattaris that the "process will take 2–3 months." The Alwattaris continued to discover cracks in their walls and kitchen floor.

On December 7, 1995, the Alwattaris, through their lawyer, sent a letter to Perry Homes demanding that Perry Homes pay for an engineering report, the cost of any necessary repairs, temporary housing for the Alwattaris during the repairs, the reduction in the house's market value, and the Alwattaris' attorneys' fees. Less than a week later, the Alwattaris sued Perry Homes for breach of contract, violations of the DTPA, negligence, and gross negligence. On January 10, 1996, Perry Homes had a structural engineer inspect the Alwattaris' house. Based on the engineer's findings, Perry Homes responded to the Alwattaris' demand letter on January 23 with the following written offer of settlement:

**Foundation Complaint.** With regard to the foundation movement, twenty (20) piers will be installed starting at the northwest corner of the house continuing along the east side of the house and two-thirds (⅔) of the way along the south side of the house. The concrete piers will be twelve (12) inches in diameter with a twenty-four (24) inch underream. The concrete piers will be installed to approximately ten (10) feet below the surface. The total cost for piering approximately will be $7,000.00. At the time the piers are installed, any hairline crack in the foundation one thirty-second (1/32) of an inch in width or larger will be filled in with epoxy.

Perry Homes will pay sixty percent (60%), i.e. $4,200.00, of the total cost of installing the piers by way of a joint check payable to the Alwattaris and the independent contractor hired to perform the installation. The Alwattaris will pay the other forty percent (40%), i.e. $2,800.00, of the total cost of installing the piers. The Alwattaris will submit a proper claim regarding the foundation repair to Home Owners Warranty Corporation ("HOW") in accordance with the terms of their Home Owners Warranty Program. Perry Homes will re-

---

**2.** Tex.Bus. & Com.Code Ann. §§ 17.41–.63 (Vernon 1987 & Supp.2000).

ceive a copy of all documents sent to and received from HOW regarding the Alwattari's claim. If the claim is accepted, Perry Holmes will not be required to reimburse the Alwattaris for the $2,800.00 paid by them towards installation of the piers. It is Perry Homes' ... understanding that HOW is paying forty percent (40%) on all accepted claims. Therefore, the coverage provided by HOW will cover the additional $2,800.00 required to install the piers. If, however, the claim is rejected, Perry Homes will reimburse the Alwattaris for their $2,800.00 contribution.

**Cosmetic Complaints.** Three (3) months after the piers have been installed, Perry Homes or an independent professional engineer will reinspect the house and will, within one (1) month of the reinspection, repair all cosmetic items related to any foundation movement or the foundation repair process.

**Attorneys' Fees.** Because suit was filed before Perry Homes was sent a formal demand letter, Perry Homes is unwilling to pay the $1,500.00 demanded by you. In order to resolve this matter, Perry Homes will pay the Alwattaris $750.00 for attorneys' fees.

After receiving this offer, the Alwattaris began settlement negotiations with Perry Homes. Sometime later, they hired their own engineer, Gary McHale, to inspect the house. McHale determined that the Alwattaris' foundation was not performing adequately. A year later, McHale returned and determined that the foundation remained unchanged and had not settled any further.

In May 1997, the Alwattaris demanded that Perry Homes repair the foundation without requiring the Alwattaris to execute a release of their claims. Perry Homes then hired a foundation repair company to make approximately $10,000 worth of repairs. Perry Homes paid for the entire cost of the repairs. By the following month, Perry Homes had completed all of the repairs the Alwattaris demanded in accordance with McHale's report.

On July 21, 1997, McHale sent a letter to the Alwattaris stating that the structural repairs had been completed and that "the foundation repairs appear to have been properly completed." Perry Homes began making further cosmetic repairs in September 1997 and had substantially completed them at the time of trial in December 1997.

## II. THE TRIAL COURT'S CHARGE

At trial, the parties stipulated that the foundation problem was a "construction defect," as defined by the RCLA.[3] The trial court granted Perry Homes a directed verdict on the Alwattaris' gross negligence claim and on their claim under the DTPA that Perry Homes took advantage of the Alwattaris' lack of experience and knowledge to a grossly unfair degree. The Alwattaris do not challenge the directed verdict.

In the court's charge, Special Question 1 asked,

Did Perry Homes make a reasonable written offer of settlement to the Plaintiffs within forty-five (45) days of its receipt of the December 7, 1995, written notice from [the Alwattaris]?

Answer "Yes" or "No."

The jury was then instructed over Perry Homes' objection *not* to answer Special Questions 3 and 4, which contained the elements of damage for recovery under the

---

**3.** The RCLA defines a "construction defect" as

a matter concerning the design, construction, or repair of a new residence, of an alteration of or addition to an existing residence, or of an appurtenance to a residence, on which a person has a complaint against a contractor. The term "construc-

tion defect" may include any physical damage to the residence, any appurtenance, or the real property on which the residence and appurtenance are affixed proximately caused by a construction defect.

Tex.Prop.Code Ann. § 27.001(2) (*see infra* note 5).

RCLA, if they answered Special Question 1 "no." Thus, the jury was charged that if they found that Perry Homes did not make a reasonable settlement offer, they were not allowed to answer any damage questions relating to the Alwattaris' RCLA claim. Instead, the jury was instructed to answer the special questions on the Alwattaris' other claims.

### III. THE VERDICT AND JUDGMENT

The jury found that Perry Homes did not make a reasonable written offer of settlement and, therefore, did not answer the special questions related to the damage elements for the Alwattaris' RCLA claim. In answering the special questions on the Alwattaris' other submitted claims, however, the jury found that Perry Homes was negligent and that it had violated the DTPA by acting unconscionably, by breaching the warranty of good workmanship, and by engaging in such conduct knowingly. The jury awarded the Alwattaris $1,557.39 in actual expenses, $10,000 for the diminution in fair market value of their home in its repaired condition, $5,000 for Perry Homes' knowing conduct, and $35,000 in attorneys' fees. Based on the Alwattaris' election to recover on the DTPA findings, the trial court doubled the first $1,000 of actual damages based on the jury's knowing conduct finding and rendered judgment awarding the Alwattaris total damages in the amount of $18,557.39 and $35,000 in attorneys' fees.

### IV. SUMMARY OF ISSUES ON APPEAL

Perry Homes asserts that the Alwattaris are precluded from recovery under the DTPA because the preemptive provision of the RCLA applies to their construction defect claim. Specifically, Perry Homes contends that it made a reasonable written settlement offer as a matter of law and

that the Alwattaris should take nothing on their RCLA claim because the Alwattaris unreasonably rejected its offer and presented no evidence to support recovery of the reasonable cost of repairs necessary to cure the defect. Perry Homes attacks other parts of the judgment and jury verdict, including multiple issues asserting that the trial court's judgment should be reversed because the jury's DTPA findings are not supported by the evidence.

Relying on our decision in *O'Donnell v. Roger Bullivant of Texas, Inc.*, 940 S.W.2d 411 (Tex.App.—Fort Worth 1997, writ denied) (op. on reh'g), four amici curiae [4] argue that the RCLA applies to the Alwattaris' claims, even if Perry Homes did not make a reasonable written settlement offer, and that the effect of Perry Homes' failure to make a reasonable offer is that the limitation on the *amount* of damages provided for in subsection 27.004(i) does not apply. *Id.* at 421. Amici argue, however, that under the controlling precedent of *O'Donnell*, the limitations on the *types* of damages provided for in subsection 27.004(h) apply to the Alwattaris' claims. *Id.*

The Alwattaris also cite *O'Donnell* as authority for the opposite proposition that the RCLA's preemptive provisions *do not* apply, because the jury correctly found that Perry Homes failed to make a reasonable written settlement offer. They contend that the jury's DTPA verdict is supported by the evidence and that the judgment of the trial court should be affirmed.

### V. THE RCLA

█ The RCLA applies to "any action to recover damages resulting from a construction defect, except a claim for personal injury, survival, or wrongful death or for damage to goods." TEX.PROP.CODE ANN.

---

4. The amici are Greater Houston Builders Association, The Home Builders Association of Greater Dallas, The Greater Fort Worth Builders Association, and Texas Association of

Builders. A fifth amicus, Centex Homes and Centex Real Estate Corporation, also filed a brief but did not address the application of the RCLA.

§ 27.002(a).[5] In enacting the RCLA, the legislature specifically provided that the RCLA would prevail "[t]o the extent of conflict between this chapter and any other law, *including the Deceptive Trade Practices–Consumer Protection Act." Id.* (emphasis supplied). Thus, a claim that exists solely by virtue of alleged construction defects falls exclusively within the RCLA. *In re Kimball Hill Homes Tex., Inc.,* 969 S.W.2d 522, 526 (Tex.App.— Houston [14th Dist.] 1998, orig. proceeding) (holding RCLA applied to allegations against home builder based on misrepresentations and false promises because there was no claim without the construction defect). A homeowner, however, may bring other claims that do not conflict with the remedial purpose of the RCLA. *Bruce v. Jim Walters Homes, Inc.,* 943 S.W.2d 121, 123–24 (Tex.App.—San Antonio 1997, writ denied) (holding RCLA does not preempt common law fraud claims).

Under the RCLA, a homeowner who complains of a construction defect must give the contractor written notice of the claim. Tex.Prop.Code Ann. § 27.004(a). The contractor then has 45 days to make a written offer to settle the claim. *Id.* § 27.004(b). If a homeowner unreasonably rejects a contractor's written offer of settlement or refuses to permit the contractor a reasonable opportunity to repair the defect, the homeowner's total recovery is limited to the reasonable cost of the repairs that are necessary to cure the construction defect, plus the amount of reasonable and necessary attorneys' fees and costs incurred before the offer was rejected or considered rejected. *Id.* § 27.004(f). Otherwise, the RCLA limits the homeowner's recovery to the following damages proximately caused by the construction defect:

(1) the reasonable cost of repairs necessary to cure any construction defect that the contractor failed to cure;

(2) the reasonable expenses of temporary housing reasonably necessary during the repair period;

(3) the reduction in market value, if any, to the extent the reduction is due to a structural failure; and

(4) reasonable and necessary attorney's fees.

*Id.* § 27.004(h). Under subsection 27.004(i), however, the total damages that a homeowner may recover against a contractor may not exceed the purchase price of the residence. *Id.* 27.004(i).

The limitations on damages and defenses to liability provided for in section 27.004 do not apply if the contractor fails to make a reasonable written settlement offer or otherwise cure the defect in the manner prescribed by the RCLA. Specifically, subsection 27.004(g) provides:

*If a contractor fails to make a reasonable offer under this section,* or fails to make a reasonable attempt to complete the repairs specified in an accepted offer made under this section, or fails to complete, in a good and workmanlike manner, the repairs specified in an accepted offer made under this section, *the limitations on damages and defenses to liability provided for in this section shall not apply.*

*Id.* § 27.004(g) (emphases supplied).

## VI. PERRY HOMES' SETTLEMENT OFFER

We first address Perry Homes' contention that it made a reasonable written offer of settlement to the Alwattaris *as a matter of law* within 45 days after receiving the December 7, 1995 written notice of the Alwattaris' complaints. As noted above, if

---

5. Because the Alwattaris filed suit in December 1995, the 1995 version of the RCLA controls. All references to the RCLA in this opinion use the letter designations of the 1995 version, not the current 1999 version. Act of May 24, 1993, 73rd Leg., R.S., ch. 797, 1993 Tex.Gen.Laws 3166, 3166–69, *amended by* Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 10, 1995 Tex.Gen.Laws 2988, 2996–97, *amended by* Act of May 8, 1999, 76th Leg., R.S., ch. 189, 1999 Tex.Gen.Laws 663, 664–67 (for current version, see *supra* note 1).

Perry Homes made a reasonable settlement offer as a matter of law, it is entitled to the benefit of the limitations on damages and defenses to liability provided for in section 27.004.

■■■ A "matter-of-law" point is used when there is an adverse finding on an issue that the appellant had the burden of proving and the issue is conclusively established by the evidence. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex. 1989); *Fenwal, Inc. v.. Mencio Sec., Inc.,* 686 S.W.2d 660, 665 n. 1 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); W. Wendell Hall, *Standards of Review in Texas,* 29 St. Mary's L.J. 351, 481–82 (1998). In reviewing a matter-of-law point, we first examine the record for evidence that supports the adverse finding while ignoring all evidence to the contrary. *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 940 (Tex.1991). If no evidence supports the adverse finding, we then examine the entire record to determine whether the evidence conclusively establishes all vital facts in support of the proposition as a matter of law. *Id.* If the issue is established conclusively by the evidence, the point must be sustained. *Meyerland Cmty. Improvement Ass'n v. Temple,* 700 S.W.2d 263, 267 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

■■■ The evidence shows that the Alwattaris purchased their house in 1992. Less than one year later, the house began to show signs of structural damage due to shifting in the foundation. The damage, which included cracks in the foundation, the walls, and the floors, worsened over the next four years. Although Perry Homes knew of these problems, it only volunteered to perform cosmetic repairs until it received the Alwattaris' demand letter in January 1996. In response to the Alwattaris' demand, Perry Homes offered to perform structural repairs to the foundation, but required the Alwattaris to pay 40% of the cost of the repairs out of their own pocket with a promise of future reimbursement, conditioned on whether their claim was paid by their homeowner's warranty. Perry Homes also conditioned its offer on the Alwattaris' executing a full release of their claims. We hold this is some evidence to support the jury's finding that Perry Homes' settlement offer was unreasonable. We must now determine the effect of this finding on the Alwattaris' RCLA action.

## VII. O'DONNELL V. ROGER BULLIVANT OF TEXAS, INC.

We first addressed the resulting effect of a contractor's failure to make a reasonable settlement offer on a homeowner's RCLA action in *O'Donnell.* In that case, the homeowners sued their contractor for faulty foundation repairs to their home. The O'Donnells asserted causes of action for negligence, gross negligence, product liability, breach of warranty, breach of contract, and violations of the DTPA. The contractor, Bullivant, moved for summary judgment, asserting that the suit was governed by the RCLA and that under the RCLA, the O'Donnells were entitled to recover no more than the purchase price of their home. The O'Donnells filed a countermotion for partial summary judgment, asserting that the RCLA did not apply because Bullivant failed to make a reasonable written settlement offer. Finding that the RCLA applied to the suit, the trial court granted Bullivant's summary judgment motion and rendered a final judgment for the O'Donnells in the amount of $44,500, the purchase price of their home. *O'Donnell,* 940 S.W.2d at 414.

On appeal to this court, the O'Donnells claimed that the trial court erred in denying their motion for partial summary judgment, on the ground that the RCLA did not apply to their claims because Bullivant failed to make a reasonable settlement offer. *Id.* After first concluding that the defect was a "construction defect" as defined by the RCLA, we held the RCLA did, indeed, apply to the O'Donnells' claims. *Id.* at 417. We further held that

Bullivant's settlement offer was unreasonable as a matter of law, and that, under the "clear and unambiguous" language of subsections 27.004(f), (g), (h), and (i),[6] the effect of the unreasonable settlement offer was that the limitation on the *amount* of damages provided for in subsection 27.004(i) did not apply. *Id.* at 420–21. We, therefore, sustained, in part, the O'Donnells' point complaining of the trial court's application of the RCLA to their case, reversed the trial court's summary judgment limiting the O'Donnells' recovery to the amount of the purchase price of their home, and remanded the case to the trial court for further proceedings consistent with our opinion. *Id.* at 421.

The language of section 27.004 is no less clear and unambiguous today than when we decided *O'Donnell*. However, we erred in *O'Donnell* by construing the language of subsection 27.004(g) to mean that only the limitation on the *amount* of damages provided for in subsection 27.004(i) does not apply when the contractor fails to make a reasonable settlement offer.[7] Instead, subsection 27.004(g) obviously encompasses *all* "limitations on damages and defenses to liability provided for in this section"—both the limitation on the *amount* of damages provided for in subsection 27.004(i) *and* the limitation on the *types* of damages provided for in subsection 27.004(h).

■ We, therefore, hold that, under subsection 27.004(g), the effect of a contractor's failure to make a reasonable settlement offer is that the contractor loses the benefit of all limitations on damages and defenses to liability provided for in section 27.004, including both the limitation

of subsection 27.004(h) on the types of damages recoverable by a homeowner and the limitation of subsection 27.004(i) on the amount of damages recoverable by a homeowner. We overrule *O'Donnell* to the limited extent that it may be interpreted as holding, either expressly or impliedly, that the *only* limitation on damages that does not apply when a contractor fails to make a reasonable settlement offer is the limitation on the amount of damages provided for in subsection 27.004(i).

Because the jury in this case failed to find that Perry Homes' written settlement offer was reasonable, the limitations on the types and amounts of damages and the defenses to liability that would otherwise be available to Perry Homes under section 27.004 of the RCLA do not apply, and, therefore, there is no conflict with the DTPA. Accordingly, the Alwattaris' DTPA cause of action is not preempted. Issue eight is overruled.

## VIII. THE ALWATTARIS' DTPA CLAIM

### A. UNCONSCIONABILITY

Perry Homes contends that the judgment awarding the Alwattaris damages for Perry Homes' unconscionable conduct must be reversed because there is no evidence of gross disparity between the value of the house at the time the Alwattaris purchased it and the price they paid for the house.

■ Under the pertinent provisions of the DTPA in effect at the time the Alwattaris filed suit, unconscionable conduct existed when the defendant's act or practice resulted in a gross disparity between the value received and the consideration paid.

---

6. At the time of *O'Donnell*, these subsections were designated (d), (e), (f), and (g). Act of May 24, 1993, 73rd Leg., R.S., ch. 797, § 5, 1993 Tex.Gen.Laws 3166, 3168 (amended 1995 & 1999).

7. Regrettably, this error led to an incorrect disposition of the appeal. Because we held in *O'Donnell* that the RCLA applied and rendered partial summary judgment that only the

"RCLA's damage cap does not apply to the O'Donnells' claims," we remanded the RCLA action for further proceedings. *Id.* at 421. The correct disposition would have been to render partial summary judgment that none of the damage limitations provided for in section 27.004 applied and remand the case for further proceedings on the O'Donnells' other non-RCLA claims.

Act of May 10, 1977, 65th Leg., R.S., ch. 216, § 1, 1977 Tex.Gen.Laws 600, 600, *amended by* Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 2, 1995 Tex.Gen. Laws 2988, 2989 (current version at TEX. BUS. & COM.CODE ANN. § 17.45(5) (Vernon Supp.2000)). Disparity in value must be determined at the time of sale; diminution in value caused by later events cannot support an unconscionability claim. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 441 (Tex.1995).

■ In determining whether there is legally sufficient evidence to support the jury's unconscionability finding, we must consider all of the evidence in the light most favorable to the Alwattaris and to indulge every reasonable inference from the evidence in the Alwattaris' favor. *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998) (op. on reh'g); *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997), *cert. denied*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■ The evidence shows that the Alwattaris purchased their house in 1992 for $200,335. Cheryl Johnson, a realtor, testified that the house was worth $161,000 on May 30, 1996 in an unrepaired state; that the value of the house in its repaired state would be $196,000 in May 1996; and that its value in May 1996, if it had never had foundation problems or related damage, would be $211,000. Thus, according to Johnson, the house had a $15,000 "buyer stigma." Adding this amount to the $35,000 for required repairs, Johnson testified that the house's actual value was at least $50,000 less than what the Alwattaris paid for it as a result of the foundation defect and that this would have impacted the value of the house on any date "no

matter what." Based on this testimony, we conclude there is legally sufficient evidence to establish gross disparity at the time the Alwattaris purchased the house in 1992.[8] We overrule issue two.

## B. DTPA DAMAGES

### 1. Reasonable Costs of Repairs

■ Perry Homes asserts that there is no evidence to support the jury's finding that the $1,557.39 amount the Alwattaris paid for repairs to the house is reasonable. To recover out-of-pocket expenses or costs paid for repairs, the Alwattaris were required to prove the amounts paid were both reasonable and necessary. *Ebby Halliday Real Estate, Inc. v. Murnan*, 916 S.W.2d 585, 589 (Tex.App.—Fort Worth 1996, writ denied). "[I]t is not necessary for a claimant to use the words 'reasonable' and 'necessary'; a claimant need only present sufficient evidence to justify a jury's finding that the costs were reasonable and the repairs necessary." *Id.*

■ The Alwattaris' son, Omar, testified to the following expenses: $57.39 to repair the master bathroom window, $750 for McHale's engineering report, $325 for Johnson's appraisal, $50 to repair a gutter, and $375 to remove the kitchen floor and paint the slab. No other evidence was offered in support of the Alwattaris' claim for these expenses. While the evidence may show the repairs were necessary and the direct result of the foundation defect, there is no evidence to support the jury's finding that the expenses were reasonable. *Fort Worth Hotel Ltd. P'ship v. Enserch Corp.*, 977 S.W.2d 746, 762–63 (Tex.App.— Fort Worth 1998, no pet.); *Ebby Halliday Real Estate*, 916 S.W.2d at 589. Issue three is sustained in part.

*Norwest Mortgage, Inc. v. Salinas*, 999 S.W.2d 846, 858–59 (Tex.App.—Corpus Christi 1999, pet. denied); *Mercedes-Benz of N. Am., Inc. v. Dickenson*, 720 S.W.2d 844, 855 (Tex.App.— Fort Worth 1986, no writ).

**8.** It was not necessary for the Alwattaris to prove that the house had zero value to establish gross disparity, as Perry Homes contends. *See, e.g., Kinerd v. Colonial Leasing Co.,* 800 S.W.2d 187, 191–92 (Tex.1990) (op. on reh'g);

## 2. Diminution in Fair Market Value

■ Perry Homes also complains that the Alwattaris are not entitled to recover $10,000 in damages for diminution in fair market value because diminution in fair market value is an improper measure of damages under the DTPA. According to Perry Homes, the proper measure of damages for unconscionability is either benefit-of-the-bargain or out-of-pocket. We disagree.

■ Out-of-pocket loss and benefit-of-the-bargain are not the exclusive measures of recoverable damages under the DTPA. *Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 162 (Tex.1992); *Kish v. Van Note*, 692 S.W.2d 463, 466 (Tex.1985) (op. on reh'g). Under the DTPA in effect at the time the Alwattaris filed suit, a prevailing consumer could recover all "actual damages" for economic loss sustained by the consumer as a result of the deceptive trade practice. Act of May 29, 1989, 71st Leg., R.S., ch. 380, § 2, 1989 Tex.Gen.Laws 1490, 1491, *amended by* Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 5, 1995 Tex.Gen. Laws 2988, 2992 (current version at Tex. Bus. & Com.Code Ann. § 17.50(b)(1) (Vernon Supp.2000)); *see also Kish*, 692 S.W.2d at 466; *Smith v. Baldwin*, 611 S.W.2d 611, 617 (Tex.1980). Such damages include diminution in market value occurring after repairs. *Ludt v. McCollum*, 762 S.W.2d 575, 576 (Tex.1988). Thus, we overrule that part of issue three challenging the damages awarded to the Alwattaris for the diminution in the fair market value of their house after repairs.[9]

## C. Knowing Conduct

■ Perry Homes argues that the evidence is legally insufficient to support the jury's finding that Perry Homes' conduct was committed "knowingly," because there is no evidence that Perry Homes sold the Alwattaris the home with knowledge of the foundation problem.[10]

Under the applicable version of the DTPA, a plaintiff is entitled to recover "additional damages" when the conduct is committed "knowingly." Act of May 29, 1989, *supra*. Knowingly means with "actual awareness ... of the falsity, deception, or unfairness of the act or practice." Act of May 10, 1977, 65th Leg., R.S., ch. 216, § 1, 1977 Tex.Gen.Laws 600, 601, *amended by* Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 2, 1995 Tex.Gen. Laws 2988, 2989 (current version at Tex. Bus. & Com.Code Ann. § 17.45(9) (Vernon Supp.2000)).

■ The evidence in this case shows that before construction began on the Alwattaris' home, Perry Homes ordered a test by Alpha Test, Inc. to predict foundation movement (Alpha Test Report). The Alpha Test Report predicted foundation movement of up to 2¼ inches.[11] In addition, the Alwattaris' engineer, McHale, testified that in new construction, it is generally the duty of the contractor to investi-

9. Because we affirm the judgment awarding the Alwattaris DTPA damages for Perry Homes' unconscionable conduct, we need not address Perry Homes' complaint in issue one regarding the jury's findings of a breach of warranty under the DTPA, or Perry Homes' challenges to the jury's negligence findings under issues six and seven.

10. As part of this argument, Perry Homes contends that a soil testing report prepared by an expert hired by Perry Homes is not admissible as a statement of a party opponent and, therefore, cannot be used to prove knowledge on the part of Perry Homes. At trial, Perry Homes objected to admission of the report on the grounds that it was inadmissible hearsay because it was not prepared by Perry Homes. However McHale, the Alwattaris' engineer, also testified as to the content of the report without any objection from Perry Homes. Because the contents of the report were previously admitted through McHale's testimony without objection, Perry Homes has waived any argument as to the report's admissibility. *Richardson v. Green*, 677 S.W.2d 497, 501 (Tex.1984); *Ramirez v. H.E. Butt Grocery Co.*, 909 S.W.2d 62, 69 (Tex.App.—Waco 1995, writ denied).

11. The report was relied on by Perry Homes' structural engineer, Don Illingsworth, in preparing the repair plan it proposed in its settlement offer to the Alwattaris in January 1996.

gate or test the soil. McHale testified that because there was a creek near or behind the Alwattaris' house, Perry Homes should have removed or recompacted the soils, or installed piers to prevent the foundation defect. Perry Homes knew of the Alpha Test Report and the fact that the Alwattaris' house was near a creek. We hold that this evidence is legally sufficient to support the jury's finding of knowing conduct under the DTPA. We overrule issues four and five.

## IX. CONCLUSION

We hold that because Perry Homes' settlement offer was unreasonable, the limitations on the types and amounts of damages and the defenses to liability that are available to a contractor under section 27.004 of the RCLA do not apply; thus, the Alwattaris' cause of action under the DTPA is not preempted by the RCLA.

We further hold that there is sufficient evidence to support the Alwattaris' recovery under the DTPA for Perry Homes' unconscionable conduct and that diminution in fair market value after repairs is a proper measure of damages under the DTPA. However, we modify the judgment to delete the award of $1,557.39 for costs of repairs, plus the prejudgment interest awarded on that amount, because there is no evidence that the amount of $1,557.39 is reasonable. The remainder of the judgment is affirmed, as modified. TEX. R.APP.P. 43.2(b).

LIVINGSTON, J. filed a concurring opinion.

TERRIE LIVINGSTON, Justice, concurring.

I wholeheartedly join in the majority opinion in all aspects except as to the necessity of overruling a portion of *O'Donnell v. Roger Bullivant of Texas, Inc.*, 940 S.W.2d 411 (Tex.App.—Fort Worth 1997, writ denied) (op. on reh'g). *O'Donnell* only held a contractor loses the monetary damage cap of subsection 27.004(i) when it fails to make a reasonable offer because this was the *only* question before this court. *O'Donnell* did not decide whether subsection 27.004(h)'s limitation on the *types* of damages is also lost when a contractor makes an unreasonable offer.

Bullivant, the contractor, had impled the purchase price of the O'Donnells' home and moved for summary judgment requesting the trial court to award the O'Donnells their purchase price. *Id.* at 414. Bullivant never asked the court to apply the subsection 27.004(h) *types* of damages. *Id.* While the *O'Donnell* opinion acknowledges the existence of the other limitations on the *types* of damages set forth in subsection 27.004(h), the holding of the opinion does not reach the issue of whether an unreasonable offer by the contractor waives the limitations on the *types* of damages in subsection 27.004(h). The only issue was whether to apply the monetary damage cap where no reasonable offer to repair had been made. Any broader interpretation of *O'Donnell* is tied to dicta only and thus does not require overruling.