

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00169-CV

———————————————

IN RE: THE COMMITMENT OF TERRY LEE HUGUES

---

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. SP-00071

---

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. INTRODUCTION

Following a jury trial, a trial court adjudged appellant Terry Lee Hugues a sexually violent predator and ordered him civilly committed. *See* Tex. Health & Safety Code Ann. § 841.081. On appeal, Hugues raises two issues, arguing that the trial court erred (1) when it overruled his relevance objection during the State's presentation of evidence and (2) when it overruled his objection during the State's jury argument. We will affirm.

## II. BACKGROUND

Because Hugues does not challenge the sufficiency of the evidence that supported the civil-commitment order, our recitation of the factual background of this case will be as brief as practicable to address the issues raised. *See* Tex. R. App. P. 47.1.

### A. Hugues's Previous Criminal History

In 1995, Hugues pleaded guilty to two felony counts of aggravated sexual assault of a child under 14 years of age, and the trial court sentenced him to two concurrent terms of 40 years' confinement in the Texas Department of Criminal Justice.[1]

In 2024, the State filed a petition to declare him a sexually violent predator—a repeat sexually violent offender who suffers from a behavioral abnormality that makes

---

[1]Hugues's anticipated date of discharge of his sentence is July 19, 2034.

him likely to engage in a predatory act of sexual violence—and to civilly commit him. *See* Tex. Health & Safety Code Ann. §§ 841.003, 841.041. Hugues requested a jury trial. *See id.* § 841.061(b).

During the jury trial, the State called two witnesses.

## B. The State's First Witness, Dr. Christine Reed

On the first day of the trial, the State called Dr. Christine Reed, a licensed clinical and forensic psychologist. Dr. Reed testified that her services were engaged to determine, by interviewing Hugues and reviewing his criminal history, prison records, and treatment records, whether he suffered from a behavioral abnormality. Dr. Reed testified that after her document review and interview she determined that Hugues suffered from a behavioral abnormality.

Dr. Reed testified that her review was intended to gauge for several risk factors commonly associated with future sexual reoffending and protective factors weighing against reoffending. She testified that the risk factors fall into two general categories: sexual deviance and antisocial orientation or lifestyle. In her evaluation, Dr. Reed balanced the risk and protective factors to evaluate whether Hugues suffered from a behavioral abnormality.

Hugues objected to Dr. Reed's testifying as to hearsay contained in records she had reviewed and upon which she had based her opinion. At Hugues's request, the trial court read a limiting instruction to the jury, admonishing that hearsay may not be

considered for the truth of the matter asserted but only to show the basis of Dr. Reed's expert opinion.

In part, Dr. Reed testified that Hugues has intellectual deficiencies that, while not themselves a risk factor in identifying a behavioral abnormality, could prevent his engaging in treatment or correcting behaviors related to a behavioral abnormality. Asked whether any details of her interview with Hugues caused her concern about his overall mental functioning, Dr. Reed testified that Hugues had an outburst of anger before the interview and behaved aggressively toward her staff. She testified that, in talking to him about mental health issues and problems he had experienced, he told her he had heard the voices of deceased people, including his recently deceased friend and a "deceased witch." Dr. Reed testified that Hugues had orchestrated an event to communicate with the deceased witch and to inform other inmates so they would know that he was so communicating.[2] She testified that Hugues also talked about believing he had the telepathic power to communicate with people outside the prison system and with a dog. Dr. Reed testified that she believed these behaviors raised significant concerns about his "ability to be based in reality and maybe some psychotic or at least delusional experiences." Hugues did not object to the relevance of this question or answer.[3]

---

[2]Dr. Reed characterized the event, "for lack of a better word," as a séance.

[3]Hugues did not object to this testimony at all.

4

## C.  The State's Second Witness, Terry Lee Hugues

On the second day of the trial, the State called Hugues as its second witness. During his testimony, the State asked him whether he had ever claimed to be able to speak to the dead.  Hugues objected "to relevance at this point."  The trial court overruled the objection.  The State repeated the question, and Hugues answered, "To be honest with you, yes, I have."

## D.  Jury Arguments

During jury argument, the State's attorney recapped risk factors associated with behavioral abnormalities as described by Dr. Reed.  *See In re Commitment of Stoddard*, 619 S.W.3d 665, 669–72 (Tex. 2020).  The State's attorney compared Dr. Reed's testimony in relation to Hugues's taking responsibility for his offenses with his characterization of his first criminal offense:

> It is true that Mr. Hugues does admit to his offenses as a whole, but he doesn't admit to the full extent of what Dr. Reed saw in the records.  He admits that this offense against [his victim], first he said it happened on one day and then changed it to two days.

Hugues objected to "the characterization of hearsay as truth in closing argument."  The trial court overruled his objection.  The State's attorney continued, "And you heard testimony from Mr. Hugues, and to be clear, testimony from Mr. Hugues in court . . . is not hearsay. That is evidence that you can consider."

## E.  The Jury Charge and Verdict

The trial court's charge to the jury included a limiting instruction as to hearsay. The instruction was substantially similar to the admonishment previously delivered during Dr. Reed's testimony—it provided the definition of hearsay and admonished the jury that the hearsay contained in records reviewed by Dr. Reed "was admitted only for the purpose of showing the basis of the expert's opinion and [could not] be considered as evidence to prove the truth of the matter asserted."

The jury found beyond a reasonable doubt that Hugues is a sexually violent predator. The trial court entered an order reflecting the verdict and ordering Hugues civilly committed for treatment and supervision. Hugues timely filed a motion for new trial and a notice of appeal.[4]

## III.  DISCUSSION

Hugues raises two issues on appeal: first, that the trial court erred by overruling his relevance objection as to whether he claimed to be able to communicate with the dead; and, second, that the State improperly characterized hearsay evidence during its jury argument.

## A.  Hugues Waived His Objection to Relevance.

To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion that states the specific grounds for the

---

[4]At the close of evidence, Hugues moved for a directed verdict on grounds unrelated to his relevance objection. Hugues's motion for new trial also solely raised grounds unrelated to his relevance and improper jury trial objections.

desired ruling, if not apparent from the request's, objection's, or motion's context. Tex. R. App. P. 33.1(a)(1)(A); *see also* Tex. R. Evid. 103(a)(1). If a party fails to do this, error is not preserved. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g). An objection is timely if made at the point evidence is offered and before the evidence is admitted. *See* Tex. R. Evid. 103; *Bushell*, 803 S.W.2d at 712. Any error in admitting evidence is deemed harmless and is waived if the objecting party permits the same or similar evidence to be introduced without objection. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 235–36 (Tex. 2007); *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004). An objection to evidence that was previously admitted without objection comes too late. *Perry Homes v. Alwattari*, 33 S.W.3d 376, 386 n.10 (Tex. App.—Fort Worth 2000, pet. denied).

Hugues did not object to Dr. Reed's testimony that he told her he was able to speak to the dead. The following day, Hugues objected to a question that was posed to a different witness—himself—and that elicited the same evidence. Hugues did not preserve any error because he did not object the first time the allegedly inadmissible evidence was offered at trial. *See* Tex. R. App. P. 33.1(a)(1)(A); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 342 (Tex. 1998). Because Hugues failed to object when the evidence was first offered, any error is deemed harmless and his objection is waived. *See Uniroyal*, 977 S.W.2d at 342; *Perry Homes*, 33 S.W.3d at 386. We overrule Hugues's first issue.

**B. The Trial Court Did Not Harm Hugues in Overruling His Objection to the State's Closing Argument.**

Hugues next argues that the State's jury argument mischaracterized hearsay evidence upon which Dr. Reed based an expert opinion, offering it to prove the truth of the matters asserted.[5]

### 1. Applicable Law

Control of counsel's conduct during jury argument rests in the sound discretion of the trial court. *Wells v. HCA Health Servs. of Tex., Inc.*, 806 S.W.2d 850, 854 (Tex. App.—Fort Worth 1990, writ denied); *see also* Tex. R. Civ. P. 269. Rule 269 of the Texas Rules of Civil Procedure governs jury arguments, and attorneys must confine their arguments strictly to the evidence and to opposing counsel's arguments. Tex. R. Civ. P. 269(e). The test for improper jury argument is whether the argument could have persuaded a juror of ordinary intelligence to agree to a verdict contrary to that to which he would have agreed but for the argument. *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009). We reverse only when the entire record shows that, as to the argument's probable effect on a material finding, (1) the argument was improper, uninvited, unprovoked, and incurable by instruction, withdrawal, or trial-court reprimand and (2) the complaint about the argument was preserved. *Standard Fire Ins. v. Reese*, 584 S.W.2d 835, 839 (Tex. 1979). Further, an appellant must show that the

---

[5]In his brief, Hugues also argues that the State's closing misstated the law and contravened the trial court's instructions in the jury charge. However, he did not object on this basis and so did not preserve the issue for appeal. *See* Tex. R. App. P. 33.1(a); *Living Ctrs. Of Tex., Inc. v. Peñalver*, 256 S.W.3d 678, 680 (Tex. 2008).

argument constituted harmful error by its nature, degree, and extent. *Id.* The party seeking reversal based on an allegedly improper argument must show that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence. *Id.* at 840. In determining whether an improper jury argument constituted harmful error, a reviewing court may properly inquire into the duration of the argument, whether it was repeated or abandoned, and whether there was cumulative error. *Id.* at 839–40.

## 2. Even if Improper, the Argument was not Harmful.

The allegedly improper argument here consisted of a single statement indicating that although Hugues took responsibility for his offenses, his admissions were both inconsistent with records Dr. Reed had reviewed and internally inconsistent. The trial court's admonitions during the evidentiary phase and in the jury instruction both instructed the jury not to consider the hearsay evidence in Dr. Reed's report for any purpose except that it formed the basis of her opinion. Thus, even if the argument had been improper, the instructions to disregard would have cured any prejudicial effect. *See In re Space Expl. Techs. Corp.*, 716 S.W.3d 576, 582 (Tex. 2025) (orig. proceeding) (citing *In re Rudolph Auto., LLC*, 674 S.W.3d 289, 311 (Tex. 2023) (orig. proceeding), and providing examples of incurable jury arguments, such as "remarks of racial prejudice, unsupported and extreme attacks on opposing parties and witnesses, or accusing opposing parties of witness manipulation or evidence tampering").

9

Other circumstances also demonstrate that the allegedly improper argument did not harm Hugues. The argument was very brief, was not repeated, and was immediately abandoned. *See Standard Fire Ins.*, 584 S.W.2d at 839–40; *see also In re Commitment of Allen*, No. 03-24-00099-CV, 2024 WL 3974797, at *5–6 (Tex. App.—Austin Aug. 29, 2024, pet. denied) (mem. op.) (citing *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 771 (Tex. 2003), and holding very similar jury argument not improper or harmful). Because Hugues cannot show harm, we overrule his second issue.

## IV. CONCLUSION

Having overruled both of Hugues's issues, we affirm the trial court's order.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: August 28, 2025

10