Theodore O'DONNELL and Michael P. O'Donnell as Independent Administrator of the Estate of Nadine O'Donnell, Deceased, Appellants,

v.

ROGER BULLIVANT OF TEXAS, INC., Appellee.

No. 2–95–100–CV.

Court of Appeals of Texas, Fort Worth.

Feb. 13, 1997.

Rehearing Overruled March 27, 1997.

Alfred Mackenzie and Les Palmer, Waco, for appellants.

Robert Hoffman and Christine L. Stetson, Dallas, for appellee.

Before CAYCE, C.J., and LIVINGSTON and RICHARDS, JJ.

## OPINION ON REHEARING

LIVINGSTON, Justice.

The December 12, 1996 order of the Court overruling appellee's motion for rehearing was withdrawn by order of January 3, 1997. On reconsideration, we overrule appellee's motion for rehearing, but we withdraw the October 31, 1996 opinion and judgment and substitute the following opinion and judgment only to clarify issues and concerns raised by the parties and amici in the motion for rehearing, response, and briefs on rehearing.

In this summary judgment case, we must address the application of the Residential Construction Liability Act[1] to appellants' claims that arise from foundation repair work done by appellee on appellants' home. Because we find that the Act applies but that its damage cap does not apply, we reverse the summary judgment that was based on the application of the Act's damage cap and remand the case to the trial court.

## FACTUAL BACKGROUND

In 1976, Theodore and Nadine O'Donnell purchased their home in Arlington, Texas for $44,500. When the O'Donnells began to experience problems with their home's foundation, they consulted Kenneth Bitting, a professional engineer and licensed real estate inspector who inspected the foundation in August 1988.

In May 1989, the O'Donnells entered into a written contract with appellee Roger Bullivant of Texas, Inc. (Bullivant) for foundation repair services. The repairs were made by installing seventeen Bullivant pilings. The pilings were made of reinforced concrete and measured four inches in diameter and fifteen to twenty feet in length. According to Mr. O'Donnell, Bullivant represented to him that the pilings would correct the O'Donnells' foundation problems. Bullivant completed the work in June 1989. According to Bullivant, the pilings would change the O'Donnells' foundation from a surface soil supported reinforced concrete slab to a slab supported on deep perimeter piles.

But the foundation problems were not corrected, and the O'Donnells experienced more damage to their home. The O'Donnells again contacted Bullivant, who then installed fifteen more pilings. According to Mr. O'Donnell, Bullivant represented to him that the fifteen additional pilings would correct the O'Donnells' foundation problems. Bullivant completed installing the additional pilings in November 1991. Bullivant returned in 1992 to "pressure grout" portions of the foundation. The O'Donnells paid Bullivant $14,400 for all of the repair work done by Bullivant.

The O'Donnells then experienced even worse foundation damage. Mr. O'Donnell stated that the house continued to move and shift, causing additional cracks in the foundation and the interior and exterior walls, and causing the foundation itself to heave, or "dome," in parts of their house.

The O'Donnells again consulted Bitting, who inspected the foundation in February and May of 1993. Bitting concluded that the repairs done by Bullivant had not corrected the foundation distress, but had aggravated the once correctable conditions.

After unsuccessful negotiations, the O'Donnells filed this suit on October 20, 1993 against Bullivant, alleging deceptive trade practices, negligence, gross negligence, product liability, breach of warranty, and breach of contract. The O'Donnells sought monetary damages and requested a declaratory

---

1. Tex.Prop.Code Ann. §§ 27.001–.006 (Vernon    Supp.1997).

judgment that the Residential Construction Liability Act (RCLA) did not limit their claims.

Bullivant moved for summary judgment, asserting that this suit was governed by RCLA and that under RCLA, the O'Donnells were entitled to recover no more than the purchase price of their home. Bullivant requested that the trial court enter a final judgment awarding the O'Donnells $44,500, the purchase price of their home. The O'Donnells filed a countermotion for partial summary judgment, primarily asserting that RCLA does not apply to this suit.

Finding that RCLA applied to this suit, the trial court granted Bullivant's summary judgment motion and entered a final judgment awarding the O'Donnells $44,500. The trial court also overruled the O'Donnells' objections to the second affidavit of Robert Pierry, Jr., Bullivant's president, and denied the O'Donnells' summary judgment motion. With eighteen points of error, the O'Donnells appeal from the final summary judgment.

In points of error three through seven, the O'Donnells essentially complain that the trial court erred in granting Bullivant's motion for summary judgment and in denying their motion for partial summary judgment, asserting that the trial court erred in determining that RCLA applies to this suit. In their tenth point of error, the O'Donnells claim that the trial court erred in denying their motion for partial summary judgment on the ground that RCLA and its damage cap do not apply to their claims because Bullivant failed to make a reasonable settlement offer as a matter of law. In point of error seventeen, the O'Donnells assert that the trial court erred in overruling their objections to Pierry's two affidavits.

## STANDARD OF REVIEW

In a summary judgment case, the issue on appeal is whether the movant met its summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* TEX.R.CIV.P. 166a(c); *Cate v. Dover Corp.,* 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

The burden of proof is on the movant, *Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301–02 (Tex.1990), and all doubts about the existence of a genuine issue of a material fact are resolved against the movant. *Cate,* 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.,* 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *Harwell v. State Farm Mut. Auto Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995); *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.,* 391 S.W.2d at 47. If the uncontroverted evidence is from an interested witness, it does nothing more than raise a fact issue unless it is clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. *See* TEX.R.CIV.P. 166a(c).

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *City of Houston,* 589 S.W.2d at 678.

Ordinarily, an order denying a motion for summary judgment is not appealable. *Humphreys v. Caldwell,* 888 S.W.2d 469, 470 (Tex. 1994). But a denial of a summary judgment can be appealed when the trial court has granted the opposing party's motion for summary judgment. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988).

## DISCUSSION

The threshold question to address is whether RCLA applies to this case. RCLA applies to "any action to recover damages resulting from a construction defect, . . . ."

TEX.PROP.CODE ANN. § 27.002 (Vernon Supp. 1997).[2]

"Construction defect" means a matter concerning the design, construction, or repair of a new residence, of an alteration of or addition to an existing residence, or of an appurtenance to a residence, . . . . ·

*Id.* § 27.001(2). Thus, we must determine whether the attempted repairs to the O'Donnells' foundation, done with concrete pilings, are a "construction defect" under RCLA.

Construction of a statute is a question of law. *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989). The primary rule of statutory construction is that a court must look to the intent of the legislature and must construe the statute to effectuate that intent. *Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 280 (Tex.1994). Statutory construction begins with an analysis of the statute. *Cail v. Service Motors, Inc.,* 660 S.W.2d 814, 815 (Tex.1983). If the statute is clear and unambiguous, we must seek the intent of the legislature as found in the plain and ordinary meaning of the words and terms used. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 352 (Tex.1990); *Connors v. Connors,* 796 S.W.2d 233, 237 (Tex.App.— Fort Worth 1990, writ denied); *see* TEX.GOV'T CODE ANN. § 312.002(a) (Vernon 1988).

### Objections to Summary Judgment Evidence

We first address point of error seventeen and the O'Donnells' objections to Pierry's affidavits that focus on the meaning of alteration or addition to an existing residence. With Bullivant's summary judgment motion, Pierry stated the following in his first affidavit:

4. On or about May 22, 1989, Mr. and Mrs. O'Donnell entered into a written contract with Bullivant for foundation repair services to be performed on the O'Donnells' Residence. Under the contract, Bullivant agreed to install 17 Bullivant pilings to stabilize the O'Donnells' foundation. The work was completed by Bullivant in June, 1989. Pursuant to its contractual

obligations with the O'Donnells, Bullivant installed 15 additional Bullivant pilings at the O'Donnells' Residence in November, 1991.

5. The pilings installed at the O'Donnells' Residence were considered both alterations of and additions to the Residence. In simple terms, once installed the Bullivant pilings became part of the O'Donnell foundation.

In his second affidavit, Pierry stated:

3. On or about May 22, 1989, Mr. and Mrs. O'Donnell entered into a written contract under which Bullivant designed, constructed and installed 17 Bullivant pilings that altered and added to the O'Donnells' foundation. More particularly, Bullivant constructed and installed 17 Bullivant pilings. The work was completed by Bullivant in June, 1989. Pursuant to its contractual obligations with the O'Donnells, Bullivant designed, constructed and installed 15 additional Bullivant pilings at the O'Donnells' Residence in November, 1991.

4. The pilings installed at the O'Donnells' Residence were considered both alterations of and additions to the Residence. The Bullivant pilings, consisting of reinforced concrete and measuring 4" in diameter and 15'—20' in length, were added to the slab of the O'Donnell residence. In effect, the pilings altered the foundation of the O'Donnell residence so that its weight rested on much deeper soil than as originally designed.

5. In other words, the design, construction and installation of the 32 RB Pilings altered the type of foundation for the O'Donnell residence from a surface soil supported reinforced concrete slab to a slab supported on deep perimeter piles. After these alterations were constructed by Bullivant, the bulk of the load of the O'Donnells' residence was supported by deep soil strata rather than surface soils.

6. Bullivant added a total of 32 pilings to the foundation, that were not part of the original foundation. No significant parts

2. All citations to RCLA are to the 1997 version of the Act unless it is otherwise necessary to cite a prior version.

of the original foundation were replaced or repaired. Instead, the pilings added to, and altered the function and design of, the original O'Donnell foundation. While one might loosely or colloquially refer to this work as "repair work" it is much more precise and accurate to say that Bullivant's work both added to and altered the foundation, and therefore, the O'Donnell residence as a whole.

7. As I understand the definition of alteration provided for in Websters' [sic] Third New International Dictionary Unabridged, it means a change or modification made on a building that does not increase its exterior dimensions. The 32 Bullivant pilings constitute alterations because, while they certainly modified the function and design of the foundation, they did not increase the home's exterior dimensions.

8. Addition is defined in Black's Law Dictionary, 5th Ed., as 'impl[ying] physical contact, something added to another … extension; increase; augmentation … that which has become united with or a part of.' The Bullivant pilings that were added to the O'Donnells' foundation fit this definition because the pilings augmented the foundation and were united with and became a part of it.

The O'Donnells objected to paragraph five of Pierry's first affidavit. The O'Donnells' objections were that Pierry's affidavit testimony could not be readily controverted, was an unsubstantiated opinion, was conclusory, and was a legal conclusion. The trial court did not expressly rule on these objections, but the O'Donnells did object to the trial court's refusal to rule and thus preserved their objections for appellate review. *See* Tex.R.App.P. 52(a).

The O'Donnells objected to paragraphs three through eight of Pierry's second affidavit on the grounds that Pierry's affidavit testimony was conclusory, was a legal conclusion, could not be readily controverted, and was unsubstantiated opinion testimony.

■ The testimony of Pierry was that of an interested witness and must be readily controvertible. Tex.R.Civ.P. 166a(c). An interested witness's testimony must be "of a nature which can be effectively countered by opposing evidence." *Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989). Self-serving statements of an interested witness about what he knew or intended are not readily controvertible and thus are not competent summary judgment evidence. *Allied Chem. Corp. v. DeHaven,* 752 S.W.2d 155, 158 (Tex. App.—Houston [14th Dist.] 1988, writ denied). Unsubstantiated opinions or unilateral and subjective determinations of facts are also incompetent summary judgment evidence. *Querner Truck Lines, Inc. v. Alta Verde Indus.,* 747 S.W.2d 464, 468 (Tex. App.—San Antonio 1988, no writ); *e.g., Harley–Davidson Motor Co. v. Young,* 720 S.W.2d 211, 216 (Tex.App.—Houston [14th Dist.] 1986, no writ); *Fulenwider v. City of Teague,* 680 S.W.2d 582, 584 (Tex.App.—Waco 1984, no writ). Conclusory statements and legal conclusions are incompetent summary judgment evidence. *Anderson v. Snider,* 808 S.W.2d 54, 55 (Tex.1991) (op. on reh'g); *Mercer v. Daoran Corp.,* 676 S.W.2d 580, 583 (Tex.1984); *Chapman v. Oshman's Sporting Goods, Inc.,* 792 S.W.2d 785, 787 n. 1 (Tex.App.—Houston [14th Dist.] 1990, writ denied).

■ Pierry's numerous statements in his affidavits that Bullivant's foundation repair work was an alteration and an addition to the O'Donnells' home are plainly legal conclusions and conclusory statements and thus are incompetent summary judgment evidence. Moreover, because those statements are conclusory and self-serving, unilateral and subjective determinations of fact, they could not have been readily controverted by the O'Donnells. The trial court should have sustained the O'Donnells' objections to the conclusions in Pierry's first affidavit, and the trial court erred in overruling the O'Donnells' objections to the conclusions in Pierry's second affidavit. But aside from the objectionable conclusions, the paragraphs at issue do contain unobjectionable facts and opinions. Thus, we sustain in part and overrule in part the O'Donnells' seventeenth point of error.

### Application of RCLA

■ We now turn to RCLA's application to this lawsuit. Subsection 27.001(2) defines

"construction defect" as "a matter concerning the design, construction, or repair of a new residence, of an alteration of or addition to an existing residence, or of an appurtenance to a residence, . . . ." TEX.PROP.CODE ANN. § 27.001(2) (Vernon Supp.1997).

This subsection is clear and unambiguous. Because the O'Donnells' home was not a new residence or an appurtenance to a residence, the issue is whether the attempted repair to the O'Donnells' existing foundation, done with concrete pilings, is a matter concerning the design, construction, or repair of

• an **alteration** of an existing residence, or
• an **addition** to an existing residence.

"Alteration" is defined as a "change or modification made on a building that does not increase its exterior dimensions." WEBSTER'S THIRD NEW INT'L DICTIONARY 63 (1981) (unabridged). "Addition" is defined as a "part added to or joined with a building to increase available space." *Id.* at 24.

Thus, for RCLA to apply to this case, the design and construction of Bullivant's foundation repair with concrete pilings would have to be an alteration or an addition to the O'Donnells' existing foundation. Applying the plain and ordinary meanings of alteration and addition to the undisputed facts of this case, we hold that foundation repair with concrete pilings is a matter concerning the design or construction of an addition or an alteration to an existing residence.

Despite the objectionable conclusions in Pierry's affidavits, which we disregard, his affidavits contain undisputed facts that support the trial court's ruling that Bullivant's foundation repair with concrete pilings was an alteration and an addition to the O'Donnells' existing residence. Bullivant installed thirty-two reinforced concrete pilings that measured four inches in diameter and were fifteen to twenty feet long. The effect of the pilings was to cause the foundation to rest on much deeper soil than originally designed; in other words, the thirty-two Bullivant pilings changed the O'Donnells' foundation from a soil-supported concrete slab to a slab supported on deep perimeter piles.

Thus, the Bullivant pilings were alterations because they modified the design and func-

tion of the O'Donnells' foundation without increasing the house's exterior dimensions. The pilings were also additions because they were physically attached to the foundation and became a part of it. We see no reason for distinguishing between a contractor who adds on a bathroom to an existing residence and a contractor who adds thirty-two concrete pilings to an existing residence. The trial court correctly found that the work done came within the definition of RCLA so that the damage limitations of the statute could apply if the other requirements for its application have been met. We overrule points of error three through seven.

## Reasonableness of Bullivant's Settlement Offer

Two of the O'Donnells' grounds in their counter-motion for partial summary judgment were: (1) as a matter of law, RCLA does not apply because Bullivant failed to make a reasonable offer to repair; and (2) as a matter of law, RCLA's damage cap does not apply because Bullivant failed to make a timely, reasonable offer to repair. In their tenth point of error, the O'Donnells claim that the trial court erred in denying their summary judgment motion on these grounds. The essence of their complaint is that RCLA in its entirety, or at least its damage cap, does not apply to their claims because Bullivant failed to make a reasonable offer under RCLA.

Because this suit was filed on October 20, 1993, the 1993 version of RCLA applies. Act of May 19, 1993, 73rd Leg., R.S., ch. 797, § 7, 1993 Tex.Gen.Laws 3166, 3169, *amended by* Act of May 17, 1995, 74th Leg., R.S., ch. 414, § 20, 1995 Tex.Gen.Laws 2988, 3004 (current version at TEX.PROP.CODE ANN. § 27 (Vernon Supp.1997)). The pertinent subsections of RCLA that are at issue are:

(d) If a claimant unreasonably rejects an offer made as provided by this section or does not permit the contractor or independent contractor a reasonable opportunity to repair the defect pursuant to an accepted offer of settlement, the claimant may not recover an amount in excess of the reasonable cost of the repairs which are necessary to cure the construction defect

and which are the responsibility of the contractor and may recover only the amount of reasonable and necessary attorney's fees and costs incurred before the offer was rejected or considered rejected.

(e) If a contractor fails to make a reasonable offer under this section, ... the limitations on damages and defenses to liability provided for in this section shall not apply.

(f) Except as provided by Subsection (d), in a suit subject to this chapter the claimant may recover only the following damages proximately caused by a construction defect:

(1) the reasonable cost of repairs necessary to cure any construction defect that the contractor failed to cure;

(2) the reasonable expenses of temporary housing reasonably necessary during the repair period;

(3) the reduction in market value, if any, to the extent the reduction is due to structural failure; and

(4) reasonable and necessary attorney's fees.

(g) The total damages awarded in a suit subject to this chapter may not exceed the claimant's purchase price for the residence.

Act of May 19, 1993, 73rd Leg., R.S., ch. 797, § 5, 1993 Tex.Gen.Laws 3166, 3168 (codified at TEX.PROP.CODE ANN. § 27.004(d)–(g) (Vernon Supp.1993)) (amended 1995) (current version at *id.* § 27.004(f)–(i) (Vernon Supp. 1997)).

In a June 28, 1993 letter to Bullivant, the O'Donnells, through their attorney, itemized their complaints and damages and made a settlement demand of at least $125,000 in actual damages and $7,500 in attorney's fees. In an August 27, 1993 response, Bullivant, through its attorney, responded by offering to repair the O'Donnells' home as outlined in Bullivant's earlier letters of February 23, 1993 and March 16, 1993. The February 23rd letter stated:

In response to a recent request made by your attorney, Les Palmer, we are hereby providing you with an outline of the work we propose to complete to remove the "bump" in the floor of the bedroom near the northwest corner of your home. The plan is as follows:

1. Remove the furniture and carpeting in the work area to another location in the home. We request that you move or protect any fragile or valuable items in this area.

2. Install polyethylene sheeting over the walls and heating vents in the work area in the northwest bedroom.

3. Remove and replace an area of approximately one hundred twenty (120) square feet of the concrete slab in the northwest bedroom. Any steel reinforcement removed or damaged shall be replaced with at least like kind and quality, and adequately connected to existing reinforcement.

4. Reinstall and restretch the carpeting and move furniture back to its original position under your direction.

5. Clean up and repair any damage we cause in completing the above work.

As you know, we propose to complete all of the above work at no cost to you.

Please call us if you or your attorney have any questions about the proposed work and to advise us when you would like us to proceed.

The March 16th letter stated:

As of this date, we have received no information from you in response to our faxed letter to you dated March 1, 1993, in which we "request that you provide us with an outline of Mr. O'Donnell's concerns (other than the "bump" in the bedroom), as well as any information or reports you or Mr. O'Donnell have obtained that address these concerns." Nevertheless, in an effort to comply with your request in your faxed letter to us dated March 1, 1993, we have reviewed Mr. O'Donnell's entire file and revisited Mr. O'Donnell's home in order to provide the following outline of proposed work to address the problems Mr. O'Donnell has experienced with the foundation of his home:

1) Complete the work as outlined in our letter to Mr. O'Donnell dated February 23, 1993 (copy attached) to remove the "bump" in the floor in the bed-

room near the northwest corner of the home;

2) Uncover, inspect and load test all accessible RB® Pilings by resetting the jacks on the pilings and observing the behavior of the pilings during loading;

3) Replace any RB® Piling that we determine is deficient in performance;

4) Check and repair, if and where required, all connections between the RB® Pilings and the foundation;

5) Construct additional RB® Pilings around the perimeter of the foundation, if and where we determine necessary;

6) Make adjustments in the level of the foundation to improve the cosmetic distress, where possible;

7) Pressure grout any void created between the raised foundation and the underlying soil;

8) Repair cracks in the slab wider than ⅟₁₆" using pressure injected epoxy;

9) Pressure test all subsurface water supply lines and sanitary drain lines upon completion of the foundation work. Repair *only* those leaks caused by our work;

10) Take elevations of an exterior brickline and on the surface of the floor coverings on the interior slab upon completion of the work for future reference;

11) Clean up and repair any damage we cause in completing our work.

Since the magnitude of the scope of the above work will largely be determined by what is found during the inspection and testing portions of the work, it is difficult to predict the time required to complete all items. Based on our experience, however, we anticipate that we should be able to complete all work in less than 60 days. It should be noted that we will require access to the interior of the home to complete only items # 1, 6, 7, 8, and 9 listed above. We would be pleased to attempt to schedule these items on Mondays, since we understand that Mr. O'Donnell does not work on Monday.

Although most of the above work is beyond the scope of our guarantee, we propose to complete all of the above work at no cost to Mr. O'Donnell. This offer is made solely in attempt to improve Mr. O'Donnell's satisfaction with our company, and is neither an admission nor a denial of responsibility for any of the problems Mr. O'Donnell has experienced with his home.

We would be pleased to discuss further any and all aspects of the work we propose with you and/or your client. As we have previously suggested, we feel a meeting with Mr. O'Donnell at his home to review the proposed work and try to answer his questions prior to commencement would be most beneficial.

We hope this letter will confirm to you our intent to work to resolve this situation quickly and amicably and, thereby, insure Mr. O'Donnell's satisfaction with our company.

■ We first address the O'Donnells' complaint that Bullivant did not timely respond to their demand letter. Subsection 27.004(b) allows a contractor like Bullivant to take advantage of the protections in RCLA by making a written settlement offer to the claimant within forty-five days of receiving the required notice of a complaint from a claimant. TEX.PROP.CODE ANN. § 27.004(a)–(b) (Vernon Supp.1997). But, the claimant and the contractor may agree in writing to extend the forty-five-day time period. *Id.* § 27.004(b).

In this case, the O'Donnells' June 28, 1993 notice letter expressly gave Bullivant sixty days to respond under the DTPA. *See* TEX. BUS. & COM.CODE ANN. § 17.505 (Vernon Supp.1997). The O'Donnells cannot now be allowed to claim an offer of repair that was received within the time period that they specified was untimely under RCLA's forty-five-day requirement. Accordingly, Bullivant's August 27, 1993 letter offering to repair was timely under subsection 27.004(b), and we overrule in part the O'Donnells' tenth point of error.

■ The O'Donnells also claim that Bullivant's offer to repair was not a reasonable offer under subsection 27.004(e). With their

summary judgment motion, the O'Donnells filed the affidavit of Bitting, who inspected the foundation in February and May of 1993. Bitting concluded that the repairs done by Bullivant had not corrected the foundation distress, but had aggravated the once correctable conditions; that it was now doubtful that the structural integrity of the house could be restored, thus affecting its habitability and marketability; and that the repair work that Bullivant had offered to do would not have repaired the foundation distress that occurred as a result of Bullivant's work, nor would it have restored the structural integrity of the house to its original condition. Thus, this peculiar situation arises because the alteration or addition to the existing residence caused the damage to the existing residence.

Mr. O'Donnell filed an affidavit stating that he and his wife purchased their home in 1976 for $44,500 and stating his opinion that, before Bullivant's work on his home, it had a fair market value of $84,500, but that, as a result of Bullivant's work on his home, it now has no fair market value.

Bullivant did not file any summary judgment evidence to controvert Bitting's and O'Donnell's affidavits. Both Bitting and O'Donnell are interested witnesses. If the uncontroverted evidence is from an interested witness, it does nothing more than raise a fact issue unless it is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. *See* TEX. R.CIV.P. 166a(c). We find that Bitting's and O'Donnell's affidavits meet rule 166a(c)'s requirements and agree with the trial court that Bullivant did not attempt to establish with summary judgment evidence that its section 27.004(b) offer of repair was reasonable.

Accordingly, based on the uncontroverted summary judgment evidence, we conclude as a matter of law that Bullivant failed to make a reasonable offer to repair under subsection 27.004(e). The trial court erred in failing to grant the O'Donnells' motion for partial summary judgment on this issue.

## Application of the Damage Cap

■ We next must determine the effect of Bullivant's unreasonable settlement offer. Subsections 27.004(e) and (g) (now subsections 27.004(g) and (i)) [3] provide:

> (e) If a contractor fails to make a reasonable offer under this section, ... the limitations on damages and defenses to liability provided for in this section shall not apply.
>
> . . . .
>
> (g) The total damages awarded in a suit subject to this chapter may not exceed the claimant's purchase price for the residence.

Act of May 19, 1993, 73rd Leg., R.S., ch. 797, § 5, 1993 Tex.Gen.Laws 3166, 3168 (codified at TEX.PROP.CODE ANN. § 27.004(e), (g) (Vernon Supp.1993)) (amended 1995) (current version at *id.* § 27.004(g), (i) (Vernon Supp. 1997)). We must construe subsection 27.004(e) and its provision that "the limitations on damages and defenses to liability provided for in this section shall not apply." *Id.* The O'Donnells claim that the effect of Bullivant's unreasonable offer is that none of the damages limitations in section 27.004, including the damage cap in subsection 27.004(g), apply. But Bullivant claims that even if its offer was unreasonable, the damage cap still applies.

Section 27.004 has three limitations on damages:

- Under subsection 27.004(d), if a claimant unreasonably rejects an offer or does not permit the contractor a reasonable opportunity to repair the defect, the claimant may not recover an amount in excess of the reasonable cost of the repairs that are necessary to cure the construction defect and that are the responsibility of the contractor and may recover only the amount of reasonable and necessary attorney's fees and costs incurred before the offer was rejected or considered rejected.

- Under subsection 27.004(f), except as provided by subsection (d), the claimant may recover only the following damages:

---

**3.** The citations to RCLA in this section of the opinion are to the 1993 version of the Act.

(1) the reasonable cost of repairs necessary to cure any construction defect that the contractor failed to cure;

(2) the reasonable expenses of temporary housing reasonably necessary during the repair period;

(3) the reduction in market value, if any, to the extent the reduction is due to structural failure; and

(4) reasonable and necessary attorney's fees.

• Under subsection 27.004(g), the total damages awarded in a suit subject to this chapter may not exceed the claimant's purchase price for the residence.

Act of May 19, 1993, 73rd Leg., R.S., ch. 797, § 5, 1993 Tex.Gen.Laws 3166, 3168 (amended 1995) (codified at TEX.PROP.CODE ANN. § 27.004(d), (f), (g) (Vernon Supp.1993)) (current version at *id.* § 27.004(f), (h), (i) (Vernon Supp.1997)).

Subsections 27.004(d) and (f) limit the *types* of damages that a claimant can recover. Subsection 27.004(d), which is the most restrictive, applies *only* when the claimant has been found to have unreasonably rejected an offer or failed to allow the contractor a reasonable opportunity to repair. It limits a claimant's recovery to cost of repairs and attorney's fees incurred before the "unreasonable" rejection, capped at the purchase price limit of subsection 27.004(g).

Subsection 27.004(f) identifies the types of damages that a claimant can recover when the claim appropriately falls under RCLA and the claimant has also complied with RCLA. In that event, the types of damages the claimant may recover are broader and more expansive. However, the purchase price damage cap still applies to limit the total *amount* on those types.

Undoubtedly, subsection 27.004(g)'s damage cap is a limitation on damages within section 27.004. We find that these subsections are clear and unambiguous, and to give them their plain, ordinary, and logical meaning, we hold that under subsection 27.004(e), the damage cap does not apply if a contractor fails to make a reasonable offer.

Because Bullivant failed to make a reasonable offer as a matter of law and the damage cap does not apply, the trial court erred in applying the damage cap to the O'Donnells' claims and in entering a summary judgment for them limited to the amount of the purchase price of their home. Accordingly, we sustain in part the O'Donnells' tenth point of error, reverse the trial court's summary judgment, reverse the trial court's denial of the O'Donnells' motion for partial summary judgment, and render partial summary judgment that Bullivant failed to make a reasonable offer as a matter of law and that RCLA's damage cap does not apply to the O'Donnells' claims. *See Jones,* 745 S.W.2d at 900 (appellate court may reverse trial court's judgment and render judgment trial court should have rendered). We remand the case to the trial court for further proceedings consistent with this opinion. Because of our disposition, we need not address the O'Donnells' other points of error.