NO. 07-08-0203-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 21, 2008

_____

DILLARD'S, INC., JENNIFER WATSON AND SHANE WATSON, APPELLANTS

V.

SHIRLEY NEWMAN AND JILL WATKINS, APPELLEES

_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 95-059-E; HONORABLE ABE LOPEZ, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

This case presents the issue of whether official immunity extends to a governmental employee privately working as an off-duty security guard. Appellant, Shane Watson, presents a sole issue in this interlocutory appeal from an order denying summary judgment. Appellees, Shirley Newman and Jill Watkins, filed suit against Watson, and others, alleging he committed a variety of intentional torts causing injury to them. Watson,

a Potter County Deputy Sheriff, filed a motion for summary judgment based upon, among other theories, a claim of official immunity. By this appeal, he contends the trial court erred in denying his motion for summary judgment because the evidence conclusively established that he was entitled to the affirmative defense of official immunity. We affirm.

### *Background*

On November 26, 2004, Newman and her daughter, Watkins, attempted to return a pair of jeans at a service counter in Dillard's Department Store. Jennifer Watson, a Dillard's sales clerk, refused to refund the purchase to Watkins's credit card because Watkins lacked a proof of purchase label. In response to Newman's request whether they could get another pair of jeans off the shelf for scanning purposes, Jennifer allegedly replied in a loud, hostile voice, "If you think I'm exchanging those pants, I'm not." Jennifer's demeanor made Newman and Watkins feel as if they were being accused of stealing the jeans. Newman asked Jennifer for her name and advised her that they were going to find a manager to resolve the issue. Jennifer then called Dillard's manager Tamara Ashford and requested security to handle irate customers. Newman and Watkins left the service counter and walked away to locate a manager.

Ashford arrived at Jennifer's service counter accompanied by Jennifer's husband, Shane Watson. Watson was working off-duty at Dillard's as a security guard. When Ashford and Watson arrived, Jennifer pointed out Newman and Watkins as the irate customers and accused Newman of "threaten[ing] to kill her and kick her ass in the parking lot."

2

Watson approached Newman from behind, grabbed her by the arm and commanded, "You are coming with me." Newman responded that he was hurting her and Watkins told him to take his hands off her mother. Newman then responded that she wasn't going anywhere with him and didn't understand why he had grabbed her. Watson released his hold on Newman and told them they were making threats. Newman and Watkins denied that any threats were made.

Watson then asked Newman for identification. However, before she complied, she noticed Watson's name tag displayed the same last name as Jennifer Watson's name tag. Newman asked Watson several times whether he was Jennifer's husband. He responded that it was none of her business. Newman requested several times that he call another security guard. Watson refused. Newman and Watkins then left the store.

Watson called for a unit from the Potter County Sheriff's Department to assist him and, while being accompanied by a Dillard's assistant manager, began following Newman and Watkins. Watson followed them across the mall parking lot to Sears, through Sears, and back into the parking lot. Watson continued telling Newman to stop while Watkins kept telling him to stop harassing them. When Newman and Watkins reached the parking lot in front of the food court entrance, they stopped. Watson then detained them for making a threat against Jennifer. Subsequently, Newman and Watkins were arrested, handcuffed, and taken to jail.

On December 1, 2004, Newman was charged with failure to identify, a Class B misdemeanor, for allegedly failing to supply identification to Watson on request. On

3

December 6, 2004, Newman was also charged with evading detention, a Class B misdemeanor, for allegedly fleeing from Watson while he was attempting to detain her. On December 6, 2004, Watkins was charged with interference with public duties, a Class B misdemeanor, for interfering with Watson performing an investigative detention. Neither Newman nor Watkins were charged for making threats against anyone.

On June 6, 2005, Newman was found not guilty following a jury trial on the evading detention charge and was granted a judgment of acquittal. On June 9, 2005, the charge against Watkins for interference with public duties was dismissed by the Potter County Attorney's Office. On June 15, 2005, Newman was tried before a Justice of the Peace on the failure to identify charge and was found not guilty.

Thereafter, Newman and Watkins filed their Original Petition alleging intentional tort actions against Dillard's, Jennifer Watson, and Shane Watson for willful detention (confinement and false imprisonment), lack of consent, assault, and abuse of process. Watson filed a motion for summary judgment on the issue of official immunity and his motion was denied. An accelerated appeal of the lower court's interlocutory order followed.

### *Appellees' Failure to File Appellate Brief*

Watson's brief was filed June 30, 2008. Appellees' brief was due on or before July 21, 2008.[1] Tex. R. App. P. 38.6(b). Appellees did not favor us with a brief nor did they

---

[1]In an accelerated appeal the appellee's brief must be filed within 20 days after the date the appellant's brief is filed. July 20, 2008, was a Sunday. Therefore, the deadline for filing Appellees' brief was extended to July 21, 2008. Tex. R. App. P. 4.1(a).

request additional time in which to do so. Rule 38.8(a) of the Texas Rules of Appellate Procedure expressly guides this Court as to what to do if an appellant fails to file a brief; however, there is no corresponding rule to guide us when an appellee fails to file a brief. Appellees' failure to file a brief leaves this Court with several mutually unpleasant options. On the one hand, we could accept Watson's arguments at face value and summarily reverse. On the other hand, we could abandon our role as an impartial jurist and become an advocate for Appellees by advancing arguments in order to affirm. Neither option is acceptable. Without specific guidance from the rules of appellate procedure, several intermediate appellate courts have held that whenever an appellee fails to file a brief, the appellate court should conduct an independent analysis of the merits of the appellant's claim of error, limited to the arguments raised by the appellant, to determine if there was error.[2] See *In re Bowman*, No. 03-07-0418-CR, 2007 WL 4269842, at \*2 (Tex.App.–Austin Dec. 5, 2007, no pet.) (not designated for publication); *Burns v. Rochon*, 190 S.W.3d 263 (Tex.App.–Houston [1st Dist.] 2006, no pet.). Our decision to independently review the merits of Watson's issues should not be construed as advocacy on behalf of Appellees.

---

[2]In this case, Watson's motion for summary judgment raised numerous theories as to why he was allegedly acting within the scope of his authority during the incident in question. On appeal, Watson raises "investigation of potential criminal activity" as the sole basis for his argument that his conduct was within the scope of his authority. Therefore, we are limited in our review to those arguments briefed by Watson.

5

### *Interlocutory Appeal*

At the outset, this Court is obliged to determine, *sua sponte,* issues affecting our jurisdiction over an appeal. *New York Underwriters Ins. Co. v. Sanchez,* 799 S.W.2d 677, 678 (Tex. 1990). As a general rule, a judgment must be final before it can be appealed. *Lehmann v. Har-Con Corp.* 39 S.W.3d 191, 195 (Tex 2001). A judgment is not final for purposes of appeal unless it disposes of all parties and issues. *North E. Indep. School Dist. v. Aldridge* 400 S.W.2d 893, 895 (Tex. 1966). There are, however, statutory exceptions permitting interlocutory appeals. *See, e.g.,* Tex. Civ. Prac. & Rem. Code §51.014(a)(5) (Vernon 2008) (allowing interlocutory appeal of denial of summary judgment based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state). Because this appeal pertains to the denial of a motion for summary judgment based upon an assertion of immunity, this Court has jurisdiction to hear this appeal.

### *Standard of Review*

We review the trial court's granting of a summary judgment *de novo.* *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A review of the denial of a motion for summary judgment where there is an assertion of official immunity is governed by the same standard that governs review of the granting of such a motion. *Norville v. Phelan,* No. 07-07-0035-CV, 2008 WL 190576, at *8 (Tex.App.–Amarillo Jan. 23, 2008, pet. denied)(not designated for publication); *Welch v. Milton*, 185 S.W.3d 586, 593 (Tex.App.–Dallas 2006, no pet.). Therefore, the *de novo* standard of review is the proper

standard of review to be employed when an appellate court reviews a trial court's order denying a motion for summary judgment based upon a claim of official immunity. Those standards are so well established that a detailed recitation is unnecessary here. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex. 1997) (citing *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985)).

### *Official Immunity*

Official immunity is an affirmative defense that shields governmental employees from personal liability so that they are encouraged to vigorously perform their official duties. *Telthorster v. Tennell,* 92 S.W.3d 457, 460-61 (Tex. 2002); *Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex. 1994). A governmental employee is entitled to official immunity when he (1) acts within the scope of his authority (2) to perform a discretionary duty (3) in good faith. *Telthorster,* 92 S.W.3d at 461; *Kassen*, 887 S.W.2d at 9. *See Gray County v. Shouse,* 201 S.W.3d 784, 786 (Tex.App.–Amarillo 2006, no pet.). To obtain summary judgment, the governmental employee must conclusively establish each of these elements; *see University of Houston v. Clark,* 38 S.W.3d 578, 580 (Tex. 2000)*,* such that there is no genuine issue of material fact as to each element. *Roberts* v. Foose, 7 S.W.3d 311, 314 (Tex.App.–Houston [1st Dist.] 1999, no pet.) (citing *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam)).

In certain fact situations, official immunity can extend the cloak of protection from personal liability to an off-duty governmental employee. *See DeWitt v. Harris County,* 904 S.W.2d 650 (Tex. 1995)(deputy constable for Harris County working off-duty as a private

7

security guard for a charity benefit); *Ramirez v. Fifth Club, Inc.*, 144 S.W.3d 574, 584 n.7 (Tex.App.–Austin 2004), *rev'd in part on other grounds,* 196 S.W.3d 788 (Tex. 2006)(full-time campus police officers working off-duty as night club security guards); *Junemann v. Harris County,* 84 S.W.3d 689 (Tex.App.–Houston [1ˢᵗ Dist.] 2002, pet. denied)(off-duty Harris County deputy constable investigating disabled vehicle).

### *Scope of Authority*

The fact that a peace officer is off-duty is not dispositive of whether he was acting outside the scope of his authority because a peace officer acts within the scope of his authority if he is discharging duties generally assigned to him. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 658 (Tex. 1994)*.* The question of whether an off-duty peace officer is acting within the scope of his authority and therefore entitled to official immunity requires an examination of the officer's conduct and a differentiation of those actions taken in a private capacity from those actions performed as a public servant. *Ramirez*, 144 S.W.3d at 584 n.7. The determination of this question presents embedded fact issues that are best left to the trier of fact. *Id.*

The record here contains ample evidence that Watson, a certified peace officer, was working as a private off-duty security guard when the events underlying this appeal occurred. If and when Watson's role changed to that of a public peace officer is unclear. What is clear is that the summary judgment evidence did not conclusively establish this as a matter of law.

8

**CONCLUSION**

Accordingly, we find that the trial court did not err in denying Watson's motion for summary judgment. Watson's issue is overruled and the judgment of the trial court denying summary judgment on the issue of official immunity is affirmed.


Patrick A. Pirtle
Justice

9