

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00204-CV

———————————————

THE CITY OF SPRINGTOWN, Appellant

V.

KALIE ASHENFELTER, Appellee

On Appeal from the 43rd District Court
Parker County, Texas
Trial Court No. CV21-1205

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

Appellee Kalie Ashenfelter sued Appellant City of Springtown after she was involved in an automobile collision with a City police officer. The City appeals the trial court's denial of its combined motion for no-evidence and traditional summary judgment, asserting that it was entitled to immunity based on (1) the police officer's official immunity and (2) the emergency exception to the Texas Tort Claims Act's (TTCA) waiver of immunity. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021, 101.055. Because we conclude that the City was not entitled to a no-evidence summary judgment and that evidence attached to the City's own traditional motion for summary judgment raised a fact issue as to whether governmental immunity was waived, we affirm the trial court's order denying the City's combined motion. *See* Tex. R. App. P. 43.2(a).

## I. Background[1]

Ashenfelter T-boned on-duty City police officer Sergeant Charles Cobb as he was driving through an intersection in his police vehicle. Sergeant Cobb entered the intersection against a red light with his emergency lights and siren on, and Ashenfelter entered the intersection with a green light. Ashenfelter initially sued Sergeant Cobb for negligence and the City under the doctrine of respondeat superior. After filing a Notice of Nonsuit as to Sergeant Cobb, Ashenfelter filed her amended petition asserting negligence against only the City. She alleged that through the actions of

---

[1]All facts are derived from the parties' summary judgment evidence.

2

Sergeant Cobb, the City had breached its duty of care by failing to yield the right-of-way, failing to keep a safe distance, failing to control the vehicle's speed, failing to take proper evasive measures to avoid the collision, and driving in a reckless manner. She also alleged that Sergeant Cobb's actions violated specific sections of Chapter 545 of the Transportation Code (Operation and Movement of Vehicles). *See* Tex. Transp. Code Ann. §§ 545.062, 545.151, 545.351, 545.401.

The City answered and filed a "Traditional and No[-]Evidence Motion for Summary Judgment" asserting governmental immunity and challenging the trial court's jurisdiction. The trial court denied the City's motion. The City then filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8).

## II. Applicable Law

A plaintiff bears the burden of affirmatively demonstrating the trial court's jurisdiction. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). This burden includes establishing a waiver of immunity in suits against the government. *Id.* The plaintiff must begin by alleging circumstances that fit within a provision of the act that authorizes a waiver, such as Section 101.021(1)(A) of the TTCA. *Rattray v. City of Brownsville*, 662 S.W.3d 860, 866 (Tex. 2023). The plaintiff must also "negate[] any relevant expressed withdrawal of the waiver" on which she relies. *Id.*

In TTCA cases, governmental immunity is waived for personal injury or property damage caused by a city employee's wrongful act or omission or the negligence arising from that employee's operation or use of a motor vehicle within the

scope of employment if the "employee would be personally liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(B). Here, for jurisdictional purposes, the City disputes whether Sergeant Cobb would be personally liable to Ashenfelter and contends that he would not be because he is entitled to the affirmative defense of official immunity. *See City of San Antonio v. Riojas*, 640 S.W.3d 534, 537–38 (Tex. 2022). Because official immunity is an affirmative defense, it is the defendant's burden to establish all the required elements: (1) the performance of discretionary duties; (2) within the scope of the employee's authority; (3) provided the employee acts in good faith. *Area Metro. Ambulance Auth. v. Reed*, No. 02-22-00406-CV, 2023 WL 3017936, at *4 (Tex. App.—Fort Worth Apr. 20, 2023, no pet.) (mem. op. on reh'g); *see also Univ. of Hous. v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000) (listing elements); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994) (discussing burden).

In addition to arguing that it is entitled to the benefit of Sergeant Cobb's official immunity to defeat Section 101.021(1)'s waiver, the City argues that an exception to the general waiver applies—the emergency exception under Section 101.055. Under that exception, the TTCA's waiver provisions do not apply to claims

> arising . . . from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others.

Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2); *see also City of Houston v. Green*, 672 S.W.3d 27, 30 (Tex. 2023) (citing Section 101.055(2)). Ashenfelter had the burden to negate the emergency exception by raising a fact issue on any one of its three elements: (1) whether Sergeant Cobb was responding to an emergency when the accident occurred; (2) whether Sergeant Cobb's actions were not in compliance with the laws and ordinances applicable to emergency action; and (3) whether Sergeant Cobb's actions reflected conscious indifference or reckless disregard for the safety of others. *See City of San Antonio v. Maspero*, 640 S.W.3d 523, 529 (Tex. 2022). If a fact issue exists as to the emergency exception, then the City had the burden to defeat Section 101.021(1)'s waiver by establishing that Sergeant Cobb was (1) performing a discretionary duty (2) within the scope of his authority (3) in good faith. *See Area Metro. Ambulance Auth.*, 2023 WL 3017936, at *4.

### III. Standard of Review

Governmental immunity may be raised by a plea to the jurisdiction or by a traditional or no-evidence motion for summary judgment, *Town of Shady Shores*, 590 S.W.3d at 550–52, and we review the trial court's ruling de novo, *Dillard's, Inc. v. Newman*, 299 S.W.3d 144, 147 (Tex. App.—Amarillo 2008, pet. denied) (mem. op.) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). When, as here, the motion for summary judgment challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties as necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *Tex. Dep't of Parks &*

*Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). When consideration of a trial court's subject-matter jurisdiction requires the examination of evidence, the trial court exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case. *Id.* In a case in which the jurisdictional challenge implicates the merits of the plaintiff's cause of action and the jurisdictional challenge includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Id.* "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.* at 227–28; *see Maspero*, 640 S.W.3d at 529. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the jurisdictional challenge as a matter of law. *Miranda*, 133 S.W.3d at 228; *Maspero*, 640 S.W.3d at 529.

Requiring the governmental entity to meet the summary judgment standard of proof protects the plaintiff from having to "put on [her] case simply to establish jurisdiction." *Miranda*, 133 S.W.3d at 228 (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). Instead, after the governmental entity asserts and supports with evidence that the trial court lacks subject-matter jurisdiction, the plaintiff, when the facts underlying the merits and subject-matter jurisdiction are intertwined, must show there is a disputed material fact regarding the jurisdictional issue. *Id.*

## IV. Discussion

In the part of its motion labeled "No[-]Evidence Motion for Summary Judgment," the City argued that there was "a failure of" certain elements under Sections 101.021 and 101.055 of the TTCA, resulting in Ashenfelter's failure to show a waiver of the City's immunity from suit. As to Section 101.055, the City argued,

> [T]here is no evidence of *the two* required elements [Ashenfelter] must establish under TTCA § 101.055 in order to invoke a waiver of the City's sovereign immunity. . . . : (1) That [Sergeant] Cobb's actions did not comply with laws and ordinances applicable to this emergency action[; and] (2) In the absence of such a law or ordinance, there is no evidence [Sergeant] Cobb acted with conscious indifference or reckless disregard for the safety of others.

[Emphasis added.]

And as to Section 101.021, the City argued,

> (1) There is no evidence of property damage or personal injury from a City employee's wrongful act or omission or negligence in the operation or use of a motor-driven vehicle or motor-driven equipment.
>
> (2) There is no evidence that the City employee directly involved in the pursuit – [Sergeant] Cobb – would be personally liable to [Ashenfelter] according to Texas law.

In its traditional motion, the City argued that (1) Ashenfelter "cannot establish the elements for a waiver of immunity under TTCA § 101.021 . . . because [Sergeant] Cobb would not be personally liable to [her] due to his official immunity" and (2) Ashenfelter "cannot overcome TTCA § 101.055[,] which establishes an emergency exception to any waiver of the City's immunity."

7

The City's arguments rest on its conclusory assertion that Sergeant Cobb was responding to an emergency when he entered the intersection. As evidence in support of its combined motion, the City filed the Springtown Police Department (SPD) dispatch call-sheet reports, Sergeant Cobb's dash camera video and still photographs taken from the video, and Sergeant Cobb's affidavit.

In response to the City's combined motion, Ashenfelter asserted that Sergeant Cobb had failed to yield the right-of-way to oncoming cross-traffic and had failed to stop at a red light. Relying on a Fourteenth Court of Appeals case that has since been overturned by the Texas Supreme Court,[2] Ashenfelter argued that a fact issue existed as to whether Sergeant Cobb acted with conscious indifference and reckless disregard for the safety of others. In support of her response, Ashenfelter filed the Department of Public Safety (DPS) crash report.[3] Although Ashenfelter did not expressly challenge the City's contention that Sergeant Cobb was responding to an emergency

---

[2]*City of Houston v. Green*, No. 14-20-00190-CV, 2022 WL 97334 (Tex. App.—Houston [14th Dist.] Jan. 11, 2022) (mem. op.), *rev'd*, 672 S.W.3d 27 (Tex. 2023).

[3]In the report, the DPS investigator provided the following narrative:

Unit 1 (police vehicle) was traveling east on Pojo [Road] and unit 2 [Ashenfelter] was traveling north on FM 51 (N. Main Street). Unit 1 entered the intersection from the west and unit 2 entered the same intersection at the same time from the south. The front left corner of unit 2 hit the right passenger compartment of unit 1 while both vehicles were in the intersection. This intersection is controlled by a traffic light and it was reported to this officer the traffic light was "GREEN" for North and South bound traffic on FM 51 [Main Street]. Unit 1 was responding to a[n] emergency call for service with emergency lights and siren "ON."

at the time of the accident,[4] she argued that Sergeant Cobb would be personally responsible for the accident because he ran the red light and failed to yield the right-of-way, and that "a fact issue exists *as to each element* of [her] claims." [Emphasis added.]

## A. The Emergency Exception

### 1. No-evidence motion

Regarding the emergency exception, the City first claimed that there is no evidence of the following: "(1) That [Sergeant] Cobb's actions did not comply with laws and ordinances applicable to this emergency action[, and] (2) [i]n the absence of such a law or ordinance, there is no evidence [Sergeant] Cobb acted with conscious indifference or reckless disregard for the safety of others." The City's motion is based on its conclusory assertion—upon which all of its arguments are premised—that Sergeant Cobb was responding to an emergency. But the City never expressly moved for summary judgment on the ground that Ashenfelter could produce no evidence that Sergeant Cobb was not responding to an emergency, one of the three elements on which a fact issue could defeat the applicability of Section 101.055.

---

[4]In its reply brief, the City argues that (1) because Ashenfelter's response to the City's motion did not expressly challenge whether Sergeant Cobb was responding to an emergency at the time of the accident, she cannot challenge the "emergency" issue for the first time on appeal, and (2) Ashenfelter's summary judgment evidence "admitted" that Sergeant Cobb was responding to an emergency. For the reasons explained below, we reject the City's arguments.

A no-evidence motion must specifically state the elements for which no evidence exists. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). Because Ashenfelter had to raise a fact issue only on any one of the three elements of the emergency exception—and the City did not expressly identify that Sergeant Cobb was not responding to an emergency as an element on which Ashenfelter could produce no evidence—the trial court did not err by denying the no-evidence motion on this basis. *See Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 695 (Tex. 2017) (noting that the Texas Supreme Court has "called for strict enforcement" of Rule 166a(i)'s requirement that a no-evidence motion specifically state the element or elements for which there is no evidence); *see also Town of Shady Shores*, 590 S.W.3d at 552 ("The safeguards built into Rule 166a(i)—a no-evidence motion may be filed only after an adequate time for discovery, *the movant must specify the elements for which no evidence exists*, the nonmovant need only present more than a scintilla of evidence supporting the challenged element, and the evidence must be viewed in the light most favorable to the nonmovant—provide a sufficient degree of protection to plaintiffs . . . ." (emphasis added)).

### 2. Traditional motion

In its traditional motion, the City argued that the evidence shows Section 101.055 does not waive sovereign immunity because it shows that Sergeant Cobb did not act with conscious indifference or reckless disregard for the safety of others. The City also argued that Sergeant Cobb established that SPD does not have written

policies applying to emergency driving "but that the practice of SPD is to require officers in emergency driving situations to respond to requirements of state law." Again, the City did not argue that the evidence conclusively proves that Sergeant Cobb was responding to an emergency; it merely based all of its arguments on the presumption that Sergeant Cobb was responding to an emergency. And, as we explain below, the evidence that the City attached to its motion raises a fact issue as to whether Sergeant Cobb was responding to an emergency at the time of the accident.

### A. Sergeant Cobb's Affidavit

Sergeant Cobb averred that at the time of the accident, he had been dispatched to a "criminal mischief incident" involving actors who had possibly cut phone wires for the 9-1-1 phone system. The SPD dispatcher advised Sergeant Cobb that the actors were on the scene of the incident but were attempting to leave. Sergeant Cobb attested that this had caused him concern because

> generally[,] criminal mischief is an intentional act. If the actors . . . had intentionally cut . . . the 9-1-1 phone system lines, . . . [they] might be potentially engaged in additional serious criminal activity . . . because disruption of the 9-1-1 emergency communication system would make it more difficult for persons or victims to report criminal activity so that police officers could promptly respond[.]

He also attested that "[d]amage to the phone system is a public safety emergency" due to the need to be able to report medical emergencies, crimes, missing children, or releases and spills of hazardous substances.

At the time he purportedly received the call from dispatch—approximately 3:30 p.m. on a weekday—Sergeant Cobb was driving a marked SPD vehicle traveling east on Pojo Road toward the intersection of Pojo Road and Main Street. The intersection sat in two school zones, which were in effect at the time of the call; drivers traveling on Pojo Road were limited to a speed of twenty miles per hour, and drivers traveling on Main Street were limited to a speed of thirty miles per hour. Another marked SPD vehicle was parked near the intersection with its overhead emergency lights operating to enforce the speed limit and to discourage drivers from speeding in the school zone. The traffic light facing Sergeant Cobb's direction on Pojo Road was red.

As Sergeant Cobb approached the intersection, he moved into the right-hand lane and drove past a line of cars on Pojo Road waiting to turn left. He slowed his speed to eight miles per hour and activated his overhead emergency lights and siren. Sergeant Cobb saw a white truck traveling south on Main Street enter the intersection; the truck appeared to be slowing down. He saw another vehicle traveling south on Main Street behind that truck stop before entering the intersection. When he did not see any other vehicles entering or approaching, Sergeant Cobb continued into the intersection. He attested that despite entering the intersection against a red light, he believed that he could do so safely after considering (1) the law enforcement need to respond to the emergency, (2) the school zone requiring drivers on Main Street to slow down, (3) the other SPD vehicle's presence at the intersection to discourage speeding, (4) the visibility of the intersection, (5) the moderate amount of traffic that

he had observed, (6) his reduction in speed to eight miles per hour before entering the intersection, (7) his activation of lights and siren as he approached the intersection, and (8) his having seen one vehicle slow and another stop on southbound Main Street.

Ashenfelter was traveling north on Main Street and had a green light, and she proceeded into the intersection. After Sergeant Cobb had entered the intersection, he saw Ashenfelter's vehicle "out of the corner of [his] eye" approaching him from his right. He turned his vehicle to the left to try to avoid the collision, but Ashenfelter's vehicle struck Sergeant Cobb's vehicle on the passenger side in a "T-bone" impact.

### b. The SPD Call-Sheet Reports

In addition to Sergeant Cobb's affidavit, the City filed three SPD call-sheet reports. One of the call-sheet reports shows that before the accident with Ashenfelter, Sergeant Cobb had been assigned to an unrelated, "very high" priority traffic incident nearby, in the 400 block of Pojo Road, at 15:24:07 (military time). According to the call-sheet report, Sergeant Cobb was then cleared from that call at 15:29:21— apparently before fire, EMS, and the wrecker arrived on the scene. The City did not include the second page of that call-sheet report.

The call-sheet report of the phone-line-cutting call reflects that the call came in at 15:31:35 and that the call was sent to dispatch at 15:32:57. SPD dispatch then assigned the call to an officer—F. Marshall, not Sergeant Cobb—at 15:34:27, and

Officer Marshall arrived on the scene at 15:37:34. According to the call-sheet report, Sergeant Cobb was not dispatched or assigned to the phone-line-cutting call.

The last call-sheet report involved the accident with Ashenfelter, and both its pages are included in the record. This call came into dispatch at 15:34:40, and Officer A. Motley was assigned to the call at 15:35:35. Officer Motley arrived on the scene at 15:37:15.

### c. Fact Issue

The evidence that the City attached to its motion raises a fact issue as to whether Sergeant Cobb was responding to an emergency at the time of the accident. According to Sergeant Cobb's affidavit and the still photographs taken from the dash camera video, the accident occurred at 15:31:03. According to the call-sheet reports, however, the "emergency" phone-line-cutting call came in at 15:31:35—approximately thirty seconds after the accident. And Sergeant Cobb was not actually assigned to that call. Thus, despite Sergeant Cobb's assertion that at the time of the accident he was responding to the phone-line-cutting call, which he perceived as an emergency, the City's other evidence indicates that the "emergency" call did not come in until after the accident and that Sergeant Cobb could not have known about the "emergency" call until after the accident. The City's own summary judgment evidence therefore

raises a fact issue as to whether Sergeant Cobb was responding to an emergency at the time of the accident.[5]

We overrule the City's first issue.

## B. Official Immunity Affirmative Defense

In its second issue, the City contends that the trial court erred by denying its combined motion for summary judgment on the ground that Ashenfelter could not raise a fact issue that the City's immunity is waived under Section 101.021 of the TTCA because the City is entitled to the benefit of Sergeant Cobb's official immunity.

Since official immunity is an affirmative defense, the City had to conclusively prove all of its elements. *See Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972); *Area Metro. Ambulance Auth.*, 2023 WL 3017936, at *4; *City of Houston v. Manning*, No. 14-20-00051-CV, 2021

---

[5]Based on its summary judgment evidence, the City substantially relies upon Sergeant Cobb's affidavit to show that he was responding to an emergency at the time of the accident. In the affidavit, Sergeant Cobb classifies the phone-line-cutting call as an "emergency" and establishes the City's purported timeline. To support summary judgment, the affidavit of Sergeant Cobb, an interested witness, must have been "clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." *Scott v. U.S. Bank, Nat'l Ass'n*, No. 02-12-00230-CV, 2014 WL 3535724, at *4 (Tex. App.—Fort Worth July 17, 2014, no pet.) (mem. op.) (quoting Rule 166a(c)); *see Trico Tech. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997). But self-serving statements of an interested witness, like Sergeant Cobb, of what he knew and intended are not competent summary judgment evidence. *Rush v. Barrios*, 56 S.W.3d 88, 103 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 400 (Tex. App.—San Antonio 2000, no pet.); *O'Donnell v. Roger Bullivant of Tex., Inc.*, 940 S.W.2d 411, 416 (Tex. App.—Fort Worth 1997, writ denied) (op. on reh'g), *overruled on other grounds by Perry Homes v. Alwattari*, 33 S.W.3d 376 (Tex. App.—Fort Worth 2000, pet. denied).

WL 1257295, at *5 (Tex. App.—Houston [14th Dist.] Apr. 6, 2021, pet. denied) (mem. op.). Thus, the City was not entitled to a no-evidence summary judgment on this ground. *See* Tex. R. Civ. P. 166a(i) (providing a party may file a no-evidence motion only for "a claim or defense on which an adverse party would have the burden of proof at trial"); *see also Grant v. Wind Turbine & Energy Cables Corp.*, No. 02-21-00036-CV, 2022 WL 2840142, at *2 n.9 (Tex. App.—Fort Worth July 21, 2022, no pet.) (mem. op.) ("[A] party may file a no-evidence motion to challenge only a claim or defense on which it does not bear the burden of proof.").

And, as we have held, the City's own evidence raised a fact issue as to whether Sergeant Cobb was responding to an emergency at the time of the accident. One of the elements the City was required to prove is that Sergeant Cobb was performing a discretionary duty at the time of the accident. *See Telthorster v. Tennell*, 92 S.W.3d 457, 461 (Tex. 2002). Although an officer's operation of a motor vehicle can sometimes be a discretionary act—for instance, during a high-speed chase, an investigation, or a traffic stop—"generally, non-emergency driving is a ministerial act that does not entitle a government employee who is involved in an accident to official immunity." *Area Metro. Ambulance Auth.*, 2023 WL 3017936, at *4; *see City of Houston v. Hatton*, No. 01-11-01068-CV, 2012 WL 3528003, at *3 (Tex. App.—Houston [1st Dist.] Aug. 16, 2012, pet. denied) (mem. op.); *City of Wichita Falls v. Norman*, 963 S.W.2d 211, 216 (Tex. App.—Fort Worth 1998, pet. dism'd w.o.j.) ("The mere fact that Melvin was on patrol at the time he ran his motorcycle into the back of Norman's car does not

16

automatically afford him the protection of official immunity."). Thus, the City did not conclusively prove its entitlement to summary judgment on the affirmative defense of official immunity. *See Reed v. Villesca*, No. 03-02-00769-CV, 2003 WL 21401991, at *3 (Tex. App.—Austin June 19, 2003, no pet.) (mem. op.).

We overrule the City's second issue.

## V. Conclusion

Because the City did not show its entitlement to either a no-evidence or traditional summary judgment, we overrule the City's two issues and affirm the trial court's interlocutory order denying the City's combined motion.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: April 25, 2024

17