Affirmed as Modified in Part, Reversed and Remanded in Part, and Majority
and Dissenting Opinions filed January 20, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-00983-CV

___________________

 

Thomas J. Hennen, Appellant/Cross-Appellee

 

V.

 

Jerry McGinty and Villas By Design, Inc.,
Appellees/Cross-Appellants



 



 

On
Appeal from the 157th District Court

Harris County,
Texas



Trial Court Cause No. 2005-41193

 



 

 

DISSENTING OPINION

A homeowner recovered
$651,230.72 as the reasonable and necessary cost to repair his house to remedy
the homebuilder’s failure to comply with its contract.  To affirm the trial
court’s judgment, we must conclude the record contains legally sufficient
evidence that this amount was a reasonable and necessary cost to repair the
house.  Because the evidence is legally insufficient on this point, this court
should reverse rather than affirm the judgment for this damage award.

Background

            In
February 2001, appellant/cross-appellee Thomas J. Hennen bought a vacant lot
facing Galveston Bay in Seabrook, Texas.  In May 2001, Hennen and appellee/cross-appellant
Villas By Design, Inc. (hereinafter, “Villas”) entered into a contract for Villas
to build a house on that lot.  Hennen moved into the house in November 2002 and
experienced various problems, including numerous water leaks or areas of water
intrusion in the house.  Though Villas tried to address these problems and stop
water from entering the house, Hennen continued to have problems and informed
Villas of this situation.  In an email sent on June 19, 2003, Hennen asked
Villas to return the keys to Hennen’s house and told Villas that on June 23,
2003, he would begin pursuing all available legal recourse against Villas.  

            After
June 2003, Villas did not have access to the house and Hennen did not give
Villas permission to undertake any further repairs.  In July 2003, Hennen
discovered extensive and noticeable mold damage to the vertical walls going up
to the ceiling in an upstairs bathroom.  During that same month, Hennen retained
a lawyer to represent him in pursuing his claims against Villas.  In August
2003, an inspection company, PE Services, inspected Hennen’s house and
conducted mold testing.  PE Services determined significant fungal
contamination permeated the house.  Following Hennen’s receipt of PE Services’s
report in October 2003, water damage and mold was identified in the exterior
walls, interior walls, ceilings, flooring, areas around several plumbing
fixtures, and inside the heating, ventilation, and air conditioning systems. 
Hennen learned that water penetration in the house was so widespread that repairing
the damage would require replacement of the entire roof, all of the home’s
stucco, and every window in the house.

Hennen retained the
services of Richard Guerra-Prats, a Corpus Christi contractor.  In its October
2003 report, PE Services documented repairs that needed to be made on the house
and recommended mold remediation.  According to Guerra-Prats, PE Services
prepared a mold-remediation protocol.  Based on this protocol, in 2003, Guerra-Prats
estimated the cost to remediate the mold using this protocol and to then build
back the parts of the house altered by the remediation.  This 2003 estimate was
not introduced into evidence at trial and was not the basis of Hennen’s request
for damages at trial.  Though Hennen met with attorneys and had various
inspections and tests performed on the house, Hennen did not file suit until June
22, 2005, two years after he denied Villas access to the house.  

Between June 2003 and
May 2008, when this case went to trial, no work was performed to prevent or
mitigate water intrusion into the house.  Consultant Mike Krismer provided
Hennen with a mold-remediation protocol for the house in July 2006.  Based on
this protocol, in January 2007, Guerra-Prats provided Hennen with a detailed
estimate as to how much it would cost, in January 2007, to remediate the mold
using this protocol and to then build back the parts of the house altered by
the remediation.  The total cost Guerra-Prats estimated was $651,230.72.[1] This January 2007
estimate and Guerrra-Prats’s trial testimony are the only evidence Hennen offered
at trial to meet his burden of proving the amount of the reasonable and
necessary cost to repair his house.  The jury found that this amount was
$651,230.72, the amount of Guerra-Prats’s estimate, and the trial court
rendered judgment awarding Hennen this amount of damages. 

Standard of Review

In their second cross-issue on appeal,
Villas and appellee/cross-appellant Jerry McGinty (hereinafter collectively,
“Villas Parties”) assert, among other things, that the evidence is legally
insufficient to support the jury’s finding that $651,230.72 was the reasonable
and necessary cost to repair Hennen’s house.  When
reviewing the legal sufficiency of the evidence, we consider the evidence in
the light most favorable to the challenged finding and indulge every reasonable
inference that would support it. City of Keller v. Wilson, 168 S.W.3d
802, 823 (Tex. 2005).  We must credit favorable evidence if a reasonable fact finder
could and disregard contrary evidence unless a reasonable fact finder could
not.  See id. at 827. We must determine whether the evidence at trial
would enable reasonable and fair-minded people to find the facts at issue.  See
id.  The fact finder is the only judge of witness credibility and the
weight to give to testimony.  See id. at 819.

 

Need for Evidence Beyond Proof of What One Contractor
Would Charge

            Texas
has a strong public policy in favor of preserving freedom of contract.  See
Fairfield Ins. Co v. Stephens Martin Paving, LP, 246 S.W.3d 653, 664 (Tex.
2008).  Unless their contract is contrary to an applicable law or public policy,
parties in Texas enjoy a broad freedom of contract.  See In re Prudential
Ins. Co. of Am., 148 S.W.3d 124, 129 (Tex. 2004).  This means that contractors
generally have the right to charge unreasonably high prices for their goods and
services, and parties have the freedom to choose to pay unreasonably high
prices for goods and services.  See id.  In light of this freedom of
contract, evidence of the amounts charged or paid is not legally sufficient
evidence that these charges are reasonable or necessary; instead, separate
evidence must be offered that raises a fact issue regarding the reasonableness
and necessity of the charges or costs in question.  See Mustang Pipeline Co.
v. Driver Pipeline Co., 134 S.W.3d 195, 200–01 (Tex. 2004); Dallas Ry.
& Terminal Co. v. Gossett, 294 S.W.2d 377, 382–83 (Tex. 1956); O &
B Farms, Inc. v. Black, 300 S.W.3d 418, 422–23 (Tex. App.—Houston [14th
Dist.] 2009, pet. denied); Dumler v. Quality Work By Davidson, No. 14-06-00536-CV,
2008 WL 89961, at *4 (Tex. App.—Houston [14th Dist.] Jan. 10, 2008, no pet.)
(mem. op.); Jackson v. Gutierrez, 77 S.W.3d 898, 904 (Tex. App.—Houston
[14th Dist.] 2002, no pet.); Allright, Inc. v. Lowe, 500 S.W.2d 190,
191–92 (Tex. Civ. App.—Houston [14th Dist.] 1973, no writ); Ebby Halliday
Real Estate, Inc. v. Murnan, 916 S.W.2d 585, 589 (Tex. App.—Fort Worth
1996, writ denied).  

Sufficiency of Evidence Regarding Necessity of the Repairs

            Regarding
necessity, Hennen points to Krismer’s expert testimony.  Though Krismer did
testify regarding various construction defects in the house, Krismer did not
testify as to the amount of any alleged repair costs or damages.  Nor did Krismer
testify that his remediation plan was reasonable or necessary.  At trial, there
was no direct evidence that it would cost $651,230.72 to make the necessary
repairs to the house.  Nor was there evidence that Villas’s breaches of
contract in constructing the house resulted in damages that would cost
$651,230.72 to repair.  Instead, Hennen relied upon Guerrra-Prats’s testimony
that it would cost this amount in January 2007 to remediate the mold using
Krismer’s protocol and to then build back the parts of the house altered by the
remediation.  After four years of water intrusion into the house with no effort
to prevent or mitigate this intrusion, Guerra-Prats estimated how much he would
charge to remediate the mold and restore the house after remediation.  Even
considering the evidence in the light most favorable to the jury’s finding and
indulging every reasonable inference that would support it, the trial evidence
would not enable reasonable and fair-minded people to find that $651,230.72 was
the cost of necessary repairs.   

Sufficiency of Evidence that $651,230.72 was a
Reasonable Cost for the Repairs

            Regarding
reasonableness, Krismer did not testify as to what it would cost to implement
his mold-remediation protocol.  For this evidence, Hennen points to Guerra-Prats’s
testimony.  In addition to testifying about his qualifications and experience,
Guerra-Prats testified as follows:

·       
Guerra-Prats is a general contractor from Corpus Christi, Texas.

·       
In January 2007, based on Krismer’s mold-remediation protocol,
Guerra-Prats provided Hennen with an estimate of the costs of implementing the
protocol (hereinafter, “Remediation Work”) and of building back the parts of
the house altered by the remediation (hereinafter, “Build Back Work”).

·       
Guerra-Prats provided Hennen with bids to repair Hennen’s house
as of January 2007.  In Guerra-Prats’s bid for the Remediation Work, the cost
to Hennen is $246,992.96.  In Guerra-Prats’s bid for the Build Back Work, the
cost to Hennen is $404,238.76.  The total of these two bids or cost estimates
is $651,230.72.

·          
Guerra-Prats provided Hennen with detailed information reflecting
the items of parts and labor that form the basis for these bids or cost
estimates.

·          
The prices reflected in Guerra-Prats’s costs estimates were
generated by a software program that used Houston prices.  Some of the costs
came from subcontractors or historical data or jobs that Guerra-Prats had done.

·          
“Not every price is right, so we have to cross-reference and
double check all our pricing.”

·          
Between January 2007 and May 2008 (the time of trial), the costs
for this type of work increased across the board by ten to fifteen percent.

·          
In coming up with the numbers for the bid for the Build Back
Work, Guerra-Prats  did not get competitive bids from contractors in Seabrook,
Texas.

            Neither
Guerra-Prats nor any other witness (1) provided the jury with an opinion
regarding the reasonable cost of the necessary repairs to Hennen’s house or (2)
testified that the pricing in the two bids or cost estimates provided by
Guerra-Prats was reasonable.  Guerra-Prats’s testimony that some of these
prices were generated by computer software based on Houston prices does not
address whether these prices were reasonable.  Guerra-Prats’s testimony that he
cross-references and double-checks all of his prices is a vague statement that
does not specify any substantive standard that Guerra-Prats uses to set his
prices.  

            There
was no direct evidence at trial that a reasonable cost to repair the
house was $651,230.72.  Under binding precedent, Guerra-Prats’s testimony that
he would charge Hennen a total of $651,230.72 for the Remediation Work and the
Build Back Work is legally insufficient to support a finding that this amount
is a reasonable cost to repair Hennen’s house.[2] 
See Mustang Pipeline Co., 134 S.W.3d at 200–201; Dallas Ry. &
Terminal Co., 294 S.W.2d at 382–83; O & B Farms, Inc., 300
S.W.3d at 422–23; Dumler, 2008 WL 89961, at *4; Allright, Inc.,
500 S.W.2d at 191–92.  If Guerra-Prats had opined that the amount in question
was a reasonable and necessary cost to repair the house, this testimony would
have been sufficient to raise a fact issue.  See Lowe, 500 S.W.2d at
192.  Though a fact issue can be raised even if no witness uses the word
“reasonable,” in the case under review, this can only occur if, considering the
evidence in the light most favorable to the jury’s finding and indulging every
reasonable inference that would support it, the record contains evidence that would
enable reasonable and fair-minded people to find $651,230.72 was a reasonable and
necessary cost to repair Hennen’s house.  See City of Keller, 168 S.W.3d
at 827.  Neither Hennen nor the majority point to any such evidence, and a
review of the record fails to reveal any.  

The only case the
majority cites regarding this issue is Hernandez v. Lautensack.  See
201 S.W.3d 771, 777 (Tex. App.—Fort Worth 2006, pet. denied).  Presuming for the
sake of argument that this court should follow this opinion from a sister court
of appeals, the Hernandez case is not on point.  In Hernandez, an
expert witness testified as to how much he would charge to replace the
plaintiff’s roof, but no witness opined that this amount was reasonable.  See
id.  Nonetheless, the Hernandez court found legally sufficient
evidence that this amount was reasonable based on evidence that this amount was
less than what the defendant himself would charge to replace the roof and
proportionately less than what a third-party contractor would charge to replace
part of the roof.  See id.  In the case under review, only Guerra-Prats
testified concerning the amount it would cost Hennen to have the repair work
done; therefore, the Hernandez case is not on point.  See id.  

Hennen has not paid any
part of the $651,230.72, and Guerra-Prats’s testimony was offered as a basis
for a damage award in Hennen’s favor.  In this context, the requirement of independent
evidence of the reasonableness of these charges is even more important to
prevent excessive damage awards based on unreasonably high price quotes. 
Nonetheless, the majority effectively concludes that Guerra-Prats’s testimony
that he would charge $651,230.72 for the Remediation Work and Build Back Work
is legally sufficient evidence that this amount is reasonable.  This analysis
conflicts with binding precedent that requires additional evidence to raise a
fact issue regarding reasonableness.  See Mustang Pipeline Co., 134
S.W.3d at 200–201; Dallas Ry. & Terminal Co., 294 S.W.2d at 382–83; O
& B Farms, Inc., 300 S.W.3d at 422–23; Dumler, 2008 WL 89961, at
*4; Allright, Inc., 500 S.W.2d at 191–92.  This court should hold that the
evidence is legally insufficient to establish that $651,230.72 was a reasonable
and necessary cost to repair the house.  

Conclusion

            For
this court to affirm the trial court’s judgment awarding Hennen $651,230.72 in
damages, the trial record must contain legally sufficient evidence that this
amount was a reasonable and necessary cost to repair Hennen’s house.  Under
this court’s binding precedent, if there were legally sufficient evidence that
the Remediation Work and Build Back Work were necessary to repair the house and
if Guerra-Prats had provided the jury with an opinion that the stated amount was
a reasonable charge for this work, then the evidence would be legally
sufficient.  But Guerra-Prats did not provide such an opinion, and under the
applicable standard of review the trial evidence would not enable reasonable
and fair-minded people to find that $651,230.72 was a reasonable and necessary
cost to repair Hennen’s house.  Because the evidence is legally insufficient to
support this jury finding, Hennen may not recover damages based on repair costs,
which were the only damages awarded in the trial court’s judgment. 
Accordingly, this court should sustain the Villas Parties’ second cross-issue
and reverse the trial court’s judgment awarding damages based on repair costs. 
Because the court instead affirms this part of the trial court’s judgment, I
respectfully dissent.  

 

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

Panel consists of Justices
Anderson, Frost, and Seymore. (Anderson, J., majority).









[1]
In part of its opinion, the majority indicates that this estimate was performed
in 2003.  See ante at pp. 3–4.  However, this estimate was made in
January 2007, more than four years after the water intrusion began at the
house.





[2]
Even if the record contained evidence that
Krismer’s mold-remediation protocol was necessary, this evidence would not
raise a fact issue as to whether Guerra-Prats’s bids or cost estimates were
reasonable.  See Dallas Ry. & Terminal Co., 294 S.W.2d at 382–83
(holding that proof certain services are necessary does not raise a fact issue
as to the reasonable cost of these services).